# Edwards *et al. versus* Tracy *et al.*

1. The declarations of a party to a suit are competent to prove him a member of an alleged firm and who were admitted by him to be the members composing it.

2. The declarations of one member of a firm are not evidence against others that they are members of a firm.

3. The fact that there was an agreement in writing between alleged partners does not exclude evidence of a declaration as to the existence of the partnership.

4. A writing offered in evidence and rejected should be attached to the bill of exceptions, that the court of error may see whether it tended to show that for which it was offered.

5. Although articles may deny to one partner the right to bind the firm by his separate act, within the scope of its business, he has the power, for the world cannot know and are not to be affected by such limitations.

6. Each partner is the agent of his partners in all matters within the scope of the firm business.

7. A participant in profits directly as such is, as to third persons, a partner, whatever may be the arrangement between the partners.

8. Although a right to share in profits may constitute a partner, a commission equal to such share as compensation does not.

October 18th 1869. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Crawford county :* No. 44, to October and November Term 1868.

This was an action of assumpsit to April Term 1866, brought by William Edwards and others, partners, trading as Edwards, Townsend & Co., against Daniel Tracy, George H. Benton, Ira Beebe, Richard Vandervier and A. B. Thorn, trading as Tracy,

[Edwards *v.* Tracy.]

Benton & Co. The writ was served on Tracy, Benton and Beebe, but returned "Nihil" as to Vandervier and Thorn. Tracy appeared; Vandervier and Thorn also appeared, and pleaded "Non assumpsit and payment with leave," &c.

The cause of action in this case was goods sold and delivered by the plaintiffs to Tracy, Benton & Co. The defence was that Vandervier and Thorn were not partners. There appeared to be no dispute as to the delivery of the goods to Tracy, Benton & Co., who had their store, doing business in groceries, at Titusville, Pa. Vandervier and Thorn lived in Brooklyn, N. Y., and did business there as wholesale grocers.

On the trial (before Vincent, J.) plaintiffs having proved the sale and delivery of the goods, offered to prove the declaration of Daniel Tracy, one member of the firm of Tracy, Benton & Co., not in presence of either Vandervier or Thorn, to be followed by acts and declarations of Vandervier and Thorn, or one of them, that they were partners of Tracy, Benton & Co.

Defendants objected, because if either Vandervier or Thorn did such acts or made such declarations, this can be given in evidence independently of the acts or declarations of Tracy, and the acts and declarations of Vandervier and Thorn should be first proven.

. The court rejected the offer, and sealed a bill of exceptions. The plaintiffs then gave evidence that goods were sent from Vandervier and Thorn to Tracy, Benton & Co.; potatoes, butter and produce generally were purchased at Titusville by Tracy, Benton & Co. Thorn was at the store at Titusville once or twice, about a month each time; he made the store his head-quarters, and examined the books. No distinction was made in the goods that were sold. Thorn complained of the manner business was carried on. He came again, bringing a man named Cook with him, who took charge of the business. Thorn remained three weeks; the goods were invoiced when Cook took charge; the sign was changed, and the name of Vandervier & Thorn put up; the goods were sold at auction; there were goods in the store not received from Vandervier & Thorn.

The plaintiffs then gave in evidence a contract between Tracy, Benton & Co. and Vandervier & Thorn, as follows:—

"Tracy, Benton & Co. hire store at Titusville at a rent of $1800 per annum, Vandervier & Thorn paying one-half the amount.

"The store furniture to be furnished and owned by Vandervier & Thorn.

"Tracy, Benton & Co. agree to receive the goods, give their time and attention to selling the same to the best advantage, provide labor, horses, wagons, &c., and pay all expenses incident to the selling and delivery of said goods, keep the business and money distinct from all other transactions, remit moneys for goods

[Edwards *v.* Tracy.]

sold, promptly to Vandervier & Thorn, and not to engage in any business that will in any way interfere with the selling of such merchandise as Vandervier & Thorn may from time to time consign to them, and are not to sell or dispose of any merchandise except such as may come from or through Vandervier & Thorn.

" In consideration of this agreement, Tracy, Benton & Co. are to receive a commission upon the sale of the merchandise consigned to them, equal to one-half the net profits upon such sale, above the cost of said goods to Vandervier & Thorn, insurance, freight and cost of delivery of said goods in store in Titusville, to·be considered as part cost of the goods.

" Any loss that may occur, Tracy, Benton & Co. agree to pay one-half."

The plaintiffs offered in evidence a letter written by Daniel Tracy to Guthrie & Ewing, dated November 9th 1867, for purpose of showing partnership with Vandervier & Thorn. Defendants object, because it is but the declaration of one of the firm of·Tracy, Benton & Co., not in the presence of, or communicated to, either Vandervier or Thorn, and because the contract of June 28th 1865 is the best evidence of the relation of the parties to each other. The evidence was rejected, and a bill of exceptions was sealed.

The plaintiffs' points were:—

1. The contract between the defendants in this case is simply an agreement between the parties mutually to share the profits and losses of their undertaking; that it makes them partners as to third persons, and that the plaintiffs are entitled to recover.

2. If the jury believe that the firm of Tracy, Benton & Co. purchased goods of the plaintiffs and others, that those goods were sold in the store of Tracy, Benton & Co. with the knowledge of Vandervier & Thorn, and in common with the goods of Vandervier & Thorn, and no separate account was kept of the sales, the defendants are therefore liable as partners.

3. If Vandervier & Thorn participated in the profits of the goods, &c., sold by plaintiffs to Tracy, Benton & Co., they are therefore liable as partners.

The court answered these points thus:—

" 1. We cannot so charge. The agreement of June 28th 1865 does not make them partners in the business therein referred to, much less in transactions entirely outside of that business.

" 2. The purchase of the goods by Tracy, Benton & Co. from the plaintiffs does not of itself make Vandervier & Thorn responsible for them. That they were sold in the store of Tracy, Benton & Co. does not do so, for over that Vandervier & Thorn had no other means of control but to stop consignment and demand a settlement when they learned of this violation of the agreement. The failure to keep a separate account of sale of the consigned

[Edwards v. Tracy.]

goods was only a breach of contract on part of Tracy, Benton & Co., which Vandervier & Thorn could correct only in the same way, or the way they did, and therefore we say that all this did not make Vandervier & Thorn partners of Tracy, Benton & Co. in buying and selling goods, and we answer this point in the negative.

3. If Vandervier & Thorn knew that Tracy, Benton & Co. were buying goods in their joint names and selling them on joint account, or knowingly participated in the profits on sale of goods sold, other than those consigned by them, it would make them liable in this suit. We have no recollection of any such evidence unless you can infer it from the acts of Thorn before and after Vandervier & Thorn took possession of the store; you cannot find any fact without evidence, and we leave the question of fact with you. We answer the legal conclusion of this point in the affirmative if you find the fact as therein stated."

The defendants' point was:

"Under the article of agreement given in evidence, and the evidence in this case, Vandervier & Thorn are not partners, and the verdict must be for the defendants, so far as Vandervier & Thorn are concerned."

This point was answered thus:—

"The agreement of June 28th 1865 does not create a partnership, and, if one existed, the evidence must be found outside of that agreement, and we answer this point in the affirmative.

"Unless, therefore, you believe from the evidence that Tracy, Benton & Co. and Vandervier & Thorn were partners in business, your verdict must be for the defendants. If from the evidence you find a partnership, your verdict will be for the plaintiffs."

The verdict was for the defendants. The plaintiffs took a writ of error, and assigned for error the rejection of their offers of evidence and the foregoing instructions to the jury.

*W. R. Bole*, for plaintiffs in error.—The statements of Tracy were evidence against himself at least: Lenhart *v.* Allen, 8 Casey 312; Anderson *v.* Levan, 1 W. & S. 334; Welsh *v.* Speakman, 8 Id. 257. A party has a right to prove one thing in his case at a time: Johnston *v.* Warden, 3 Watts 101. The limitations of articles of partnership cannot affect persons to whom they are unknown: Tillier *v.* Whitehead, 1 Dallas 269; Churchman *v.* Smith, 6 Whart. 146; Gill *v.* Kuhn, 6 S. & R. 333. Tracy, Benton & Co. being entitled to one-half the profits of the store, and bear the loss under the agreement, were partners; Purviance *v.* McClintee, 6 S. & R. 259; Widdifield *v.* Widdifield, 2 Binney 249; Waugh *v.* Carver, 2 H. Black, 235; Felichy *v.* Hamilton, 1 W. C. C. R. 492; Holmes *v.* U. S. Ins. Co., 2 Johns. Cas. 329; McIvor *v.* Humble, 16 East 173; Green *v.* Beesley, 2 Bing.

N. C. 108; Hesketh *v.* Blanchard, 4 East 144; Dobb *v.* Halsey, 16 Johns. 34. If there was nothing to charge Vandervier & Thorn, still there would have been a verdict against the other defendants; Act of April 16th 1851, §§ 13, 14, Pamph. L. 615, Purd. 776, pl. 1, 2.

·There was no paper-book for the defendants in error.

The opinion of the court was delivered, June 3d 1870, by

SHARSWOOD, J.—The defendants were sued in the court below as partners. Daniel Tracy, George H. Benton and Edward B. Beebe were in business under the firm name of Tracy, Benton & Co. The goods of the plaintiffs were sold and delivered to them. Richard Vandervier and A. B. Thorn composed a firm in New York, in the same busines, and the allegation of the plaintiffs was that they were dormant partners of Tracy, Benton & Co. Tracy and Vandervier and Thorn, respectively, appeared by attorney. The other defendants did not appear, nor was any plea put in except on behalf of Vandervier and Thorn. The case, however, was tried without any notice of the irregularities.

The plaintiffs offered to prove the declarations of Daniel Tracy, one of the defendants, that Vandervier and Thorn were members of the firm of Tracy, Benton & Co., not in the presence of either Vandervier or Thorn, to be followed by acts and declarations of Vandervier and Thorn, or one or either of them, to the same effect. This offer was rejected by the court, an exception was taken by the plaintiffs, and it forms the subject of the 1st assignment of errors.

The declarations of a party to the suit as to the existence of a partnership are unquestionably competent to prove him to have been a member of the alleged firm, and who were admitted by him to have been the persons composing it. Such declarations are not, however, competent evidence against the others, and it is the duty of the court so to instruct the jury: Taylor *v.* Henderson, 17 S. & R. 453; Johnston *v.* Warden, 3 Watts 101; Haughey *v.* Strickler, 2 W & S. 411; Lenhart *v.* Allen, 8 Casey 312; Bowers *v.* Still, 13 Wright 65; Crossgrove *v.* Himmelrich, 4 P. F. Smith 203. The same rule has been applied to the admissions of a defendant not served with process, and not, therefore, a party to the issue: Porter *v.* Wilson, 1 Harris 641. The objection taken below was that the acts and declarations of Vandervier and Thorn should have been first given in evidence to charge them; but it is plain that the same objection would have been equally good against their separate declarations to connect the others with them. The acts or declarations of each must, in the nature of things, be given in evidence separately and successively; otherwise, nothing of the kind would be available but a joint declaration

[Edwards v. Tracy.]

by all together. Practically, it would exclude all such evidence. If A admits that he is a partner with B, and B admits that he is a partner with A, it is evidence of a partnership as to both: Drennen v. House, 5 Wright 30, and it matters not which declaration is first offered. Nor does the fact that there was an agreement in writing between the defendants prevent the admission of this species of testimony. This was expressly so held in Widdifield v. Widdifield, 2 Binney 245. " Might not evidence be given," asks Chief Justice Tilghman, " of their confession of a general partnership subsequent to the articles, or of their acting in such a manner as was inconsistent with anything but a general partnership? How are the world to know anything about instruments of writing made in secret between persons in trade?" We think there was error, therefore, in the rejection of this offer.

The 2d error assigned is in rejecting a letter written by Daniel Tracy to third persons for the purpose of showing a partnership with Vandervier and Thorn. But this letter, or a copy of it, should have been attached to the bill of exceptions by a *pro ut*, in order to enable this court to see whether it did tend to show that for which it was offered: Stafford v. Stafford, 3 Casey 144; Gratz v. Gratz, 4 Rawle 411; Rice v. Groff, 8 P. F. Smith 116. It is true that this is not the reason stated by the learned judge for the rejection; but as Mr. Justice Kennedy remarks in Gratz v. Gratz, it would not be right to test the admissibility of evidence by the insufficiency of the reason assigned by the court below for rejecting it. A right judgment is not to be reversed on account of a wrong reason given for rendering it.

The 3d and 7th assignments of error may be considered together. They relate to the question whether upon the true construction of the written agreement of June 28th 1865, between the defendants, they thereby became partners as to third persons. That it was a partnership *inter se* has not been, and cannot be seriously pretended. It is headed " Memorandum of terms upon which Vandervier & Thorn consign to Tracy, Benton & Co., Titusville, Pa., merchandise to be sold for their account; viz., Vandervier & Thorn." Such it appears to be. Tracy, Benton & Co. were to hire a store at a specified rent, of which Vandervier & Thorn were to pay one-half, and to supply and own the store fixtures.. Tracy, Benton & Co. were to receive the goods consigned to them, dispose of them to the best advantage, keep the business and money distinct from all other transactions, remit the proceeds promptly to Vandervier & Thorn, not engage in any business that would in any way interfere with the selling of such merchandise as Vandervier & Thorn might, from time to time, consign to them; and not sell or dispose of any merchandise except such as might come from or through Vandervier & Thorn. In con-

[*Edwards v.* Tracy.]

sideration of these services they were to receive a commission on the sale of the merchandise consigned to them equal to one-half the net profits above the cost of said goods to Vandervier & Thorn.   It may be conceded that if, under this agreement, Tracy, Benton & Co. would have been liable as partners for debts contracted by Vandervier & Thorn in the purchase of goods to supply the stock of the store, the correlative proposition must also hold good—that Vandervier & Thorn would be liable for goods purchased by Tracy, Benton & Co.   For, although articles of partnership may deny to one of the partners any right to bind the firm by his separate act, within the scope of the partnership business he nevertheless has the power, inasmuch as the world cannot know, and are not to be affected, by any such limitations. Each partner is the general agent of his copartners in all matters within the scope of the business carried on by the firm : Lindley on Part. 260; Loudon Savings Fund *v.* Hagerstown Bank, 12 Casey 498.   It is well settled law in this state that a participant in profits directly as such, no matter what may be the arrangement between the parties, is, as to third persons, a partner : Gill *v.* Kuhn, 6 S. & R. 337 ; Churchman *v.* Smith, 6 Whart. 148.   The reason is that the creditors trust to the common stock, and therefore no man shall be allowed to lessen that fund by taking part of the profits which belong to it without incurring the responsibility of a partner : Purviance *v.* McClintee, 6 S. & R. 259.   " In the present state of the law," said Chief Justice Tilghman, " we cannot afford to part with any of the safeguards against fraud. It is impossible to know the secret agreements of merchants.   It is of importance that creditors should not be deprived of that fund to which they had a right to look, as it was the visible sign held out to them by which they were to judge of the amount of the partnership property."   The dictum of Chief Justice De Gray, in Grace *v.* Smith, 2 Wm. Blackst. 998,—"that every man who has a share of the profits of a trade ought also to bear a share of the loss," was adopted as the ground of judgment in Waugh *v.* Carver, 2 H. Blackst. 235, where it was laid down " that he who takes a moiety of all profits indefinitely shall, *by operation of law*, be made liable to losses, if losses arise, upon the principle that, by taking a part of the profits, he takes from the creditors a part of that fund which is the proper security to them for the payment of their debts."   That case has been followed in England in many other cases, down to a very recent period : 1 Smith's Leading Cases 504; 3 Kent's Com. 27 ; Lindley 36.   It remained unshaken for more than seventy years.   "The reasoning on which it proceeds," said Baron Bramwell, in Bullen *v.* Sharp, to be presently cited, " seems to have been generally acquiesced in at the time ; and when more recently it was disputed, it was a common opinion (in which I for one participated) that the

doctrine had become so inveterately part of the law of England that it would require legislation to reverse it." Notwithstanding all this it may now be considered as substantially overruled in England by Cox v. Hickman, 8 House of Lords Cases 268; and Bullen v. Sharp, 1 Common Pleas, Law Rep. 86, in the Exchequer Chamber.

It is not necessary here, and it would be presumptuous, to enter upon a consideration of the able and elaborate opinions of the judges in those cases, in which it was concluded that a direct participation in profits as such was cogent, but not conclusive, evidence of a partnership. A distinction, which, it must be admitted, is of a very refined and shadowy character, has been authoritatively established both there and here, that while a right to share in the profits may constitute a partner, a commission equal to such a share, as a compensation for services, does not: Ex parte Hamper, 17 Ves. 404; Ex parte Watson, 19 Ves. 459; Miller v. Bartlett, 15 S. & R. 137; Dunham v. Rogers, 1 Barr 255. That this exception to the general rule is founded upon a distinction without any difference has been generally conceded, and it is used by Baron Bramwell in Bullen v. Sharp with great force as an argument against the soundness of the rule itself. It is entirely too late now to question either the rule or the exception. We are bound to stand *super antiquas vias*, by our own decided cases; for nothing is truer, or more important, than the maxim: *Omnis innovatio plus novitate perturbat, quam utilitate prodest.* The interest of Tracy, Benton & Co. in the profits being, by the terms of the agreement, "a commission upon the sale of the merchandise consigned to them, equal to one-half of the net profits upon such sale," did not make them partners, nor attach to them either the rights or responsibilities of such partners.

But the agreement adds: "Any loss that may occur, Tracy, Benton & Co. agree to pay one-half." Here, indeed, is the pinch of the case. If this clause is to be construed in its broad sense, which would make Tracy, Benton & Co. liable for a moiety of the losses which might arise to Vandervier & Thorn in the purchase and sale of the goods—for example, from a fall in the market prices of the commodities—then, indeed, it would be difficult to see how they could stand in any other relation than as partners even *inter se*. They would seem to have in that case a direct interest in the commodities, or stock, itself, and to be in no way distinguishable from those having a direct participation in profits and losses. "Traders," says Tindal, C. J., "become partners between themselves by a mutual participation of profit and loss; but as to third persons, they are partners if they share the profits of the concern:" Pott v. Eyton, 3 Manning, Granger & Scott 39. It is not necessary, however, to express any decided opinion upon this point; because we think the clause in question does not rea-

sonably bear so broad a construction.   Looking at the whole scope of the agreement, the loss referred to was meant to be confined to that which might arise in the sale and disposition of the goods consigned by Vandervier & Thorn to Tracy, Benton & Co.   The learned judge below thought that a loss by fire was excluded, and perhaps he was right; for the agreement evidently implies that the duty of insurance and, therefore, the risk from fire, rested upon Vandervier & Thorn alone.   They were to pay the freight and be at the cost of delivering the goods at Titusville, so that any liability of Tracy, Benton & Co. was not contemplated until such delivery.   The agreement constitutes them factors, or commission merchants, with power to sell the goods consigned to them, but no authority is given to buy other goods.   On the contrary, they stipulate not to sell or dispose of any merchandise, except such as might come from or through Vandervier & Thorn.   Now, it is clear that an agreement by a factor, selling goods consigned to him for a commission, that he would be liable, either in whole or in part, even for fire or robbery, or for bad debts made in the sale of the goods on credit, would not constitute him a partner with his principal.   Every factor who sells under a *del credere* commission, assumes the entire responsibility for the sales made by him; and it has never been pretended that it either conferred upon him the authority, or visited him with the liability, of a partner. We are of the opinion, then, that the learned judge below was right in holding that the agreement of June 28th 1865 did not create a partnership, and these assignments of error, consequently, are not sustained.

There is no error in the answer to the plaintiff's 2d point, which is the ground of the 4th assignment.   The violation by Tracy, Benton & Co. of the agreement of June 28th 1865 by the purchase and sale of other goods than those consigned to them, even with the knowledge of Vandervier & Thorn, and their not keeping separate accounts of the sales as they were bound to do, was certainly no reason for subjecting Vandervier & Thorn to liability, as partners, for goods bought by Tracy, Benton & Co. in their own name and on their own credit.   The business of the store was not carried on in the name of Vandervier & Thorn, but of Tracy, Benton & Co.; and there was no holding out of them as partners, or interested in purchases made by Tracy, Benton & Co.

The plaintiff's 3d point was in effect affirmed by the court, and if the judge added, "We have no recollection of such evidence, unless you can infer it from the acts of Thorn before and after Vandervier & Thorn took possession of the store," it is not easy to perceive how the plaintiffs were injured by that remark.   In point of fact it is not pretended that there was any other evidence than that referred to by the judge, and this was submitted to the jury as requested by the plaintiffs.

[Edwards *v.* Tracy.]

The 6th assignment of error is that " the court erred in charging the jury that unless they believe, from the evidence, that Tracy, Benton & Co. and Vandervier & Thorn were partners in business, their verdict must be for the defendants." It is contended that the plaintiffs were, at all events, entitled to a verdict against Tracy, Benton & Co., but only one of them had appeared to the action, and he had not pleaded. How could there have been a verdict against those who were not parties to the issue? In the absence of evidence that the names of the members of the firm of Tracy, Benton & Co. were filed in the office of the prothonotary of the Court of Common Pleas of the county where the partnership was carried on, in pursuance of the 13th section of the Act of April 14th 1851, Pamph. L. 615, the defendants could not plead, or take advantage of "the inclusion of the names of persons not members of said partnership," and had all of them been in court and parties to the issue, the plaintiffs, having made out their case against Tracy, Benton & Co., would have been entitled to a verdict against them, even if Vandervier & Thorn were not partners. This point, indeed, does not appear to have been presented or brought to the notice of the court; nor the irregularity of trying an issue joined by some of the defendants before a judgment against those who were in default. As the case, however, goes back, the record may be amended, and the matter made right on another trial.

Judgment reversed, and *venire facias de novo* awarded.