# Brown et al. *versus* Jaquette.

1. J. agreed to farm the land of B., for which he was to have one-half the proceeds, each party furnishing one-half the seed, stock, poultry, hogs, &c. J. was to find all the farming implements and the working stock, and all the requisite labor, and pay the road tax and one-half of all other taxes. He was also to submit a statement every three months, and make settlement : *Held*, that this agreement was a lease of the farm on shares, and not a partnership.

2. J.'s interest in a portion of the proceeds of the farm was sold at sheriff's sale, on a judgment against him, and B. claimed that he was entitled to a partnership account, and that the sheriff's vendee only took title to the balance due J. after said account : *Held*, that no such claim could be sustained.

3. B. neither exercised his right to distrain nor gave the sheriff notice of his claim for rent : *Held*, that the interest of J. was divested by the sheriff's sale as well as the right of B. to distrain.

March 22d 1880.    Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas of *Delaware county :* Of January Term 1879, No. 57.

Case stated wherein Martha M. Brown and others, devisees of J. J. Brown, were plaintiffs and J. L. Jaquette defendant. The case, as stated, was, in substance, as follows : On October 20th 1864, J. J. Brown and S. P. Jaquette executed the following agreement in writing : " That for the term of one year, commencing on the first day of April 1865, to be fully completed on the thirty-first day of March 1866, the said Jaquette for and in consideration of one-half the product, agrees to farm for the said J. J. Brown, the land lately purchased by him of John E. Morgan, on the following terms and conditions : Each party is to find one-half the stock, including cattle, poultry, hogs, &c., and one-half the seeds for crops. The said Jaquette to find all the farming implements and all the working stock, and it is distinctly understood that no more of such stock is to be kept on the place than is absolutely necessary for the working thereof. The said Jaquette to find all the requisite labor, pay the road tax, and one-half of all other taxes. He is to submit to J. J. Brown at the end of every month, or three months, as may be agreed upon, a true and careful

13 NORRIS—8

statement of all receipts, and make settlement of the same. No timber is to be cut on the premises without the special direction of the owner. The fences are to be kept in good repair, the weeds kept down, and the premises generally preserved in tidy, neat order. J. J. Brown is to pay one-half the blacksmith's and wheelwright's bill, and reserves for himself the privilege, should he at any time desire it, of keeping on the farm for his own use one horse."

Jaquette entered into possession of the premises, and continued to hold possession under said agreement under April 1st 1878. On the 16th day of March 1878, being in arrear in accounting to the plaintiffs for their share of the proceeds of the products of the farm, which, in accordance with the above agreement, he had marketed, and claiming, at the same time, a certain set-off or counter-claim to the amount which he was in arrear, Jaquette entered into an agreement in writing to submit the questions of difference between the plaintiffs and himself in this behalf to certain disinterested persons for final decision, waiving all right of appeal.

These arbitrators made an award in favor of the plaintiffs for $555.39. On the 19th of March 1878 certain confessed judgments were entered against Jaquette, and a levy was made on his individual property, and also on certain joint property on the farm, such as cattle, corn, wheat and hay. The sheriff sold the right, title and interest of S. P. Jaquette in said joint property to Jane L. Jaquette, the defendant in this case. By agreement a sale of all said joint property was subsequently made, one-half the proceeds of which, $479.80, being paid over to the plaintiffs, the other half to await the determination, to be ascertained in this action, as to who was entitled thereto.

1. If the court be of opinion that at the time the above writs of execution against Samuel P. Jaquette were issued, the plaintiffs' interest in the joint property would have precedence of said writs of execution, and was not divested by the sheriff's sale upon that part of said joint property which was the product of said farm, to wit, the corn, wheat and hay, then judgment to be entered for the plaintiffs for the sum of $147.13.

2. If, at the time the above writs of execution against Samuel P. Jaquette were issued, the plaintiffs' interest in the joint property would take precedence of said writs of execution, and was not divested by the sheriff's sale upon all the joint property, then judgment to be entered for plaintiffs for $479.30.

3. If plaintiffs' interest in said joint property was not superior to, and preferred over, such writs of execution, and was divested by said sale, then judgment to be entered for defendant.

The court, Clayton, P. J., entered judgment for defendant, when plaintiffs took this writ, and assigned this action for error.

*J. B. Thayer*, for plaintiffs in error.—The plaintiffs contend that as to this joint property, they and Samuel P. Jaquette were partners, and that his interest therein was only such balance which might be found due to him upon a settlement of the partnership accounts; that the debt of $555.39, found by the arbitration, was the balance due by him to the plaintiffs in error, and being for their share of the products of the joint property which he had sold, and not paid over, they were entitled to a credit for that amount on any such settlement. The case presents every essential element of a partnership. There was a joint contribution of capital, a division of profit and a provision for an account.

If this were an ordinary lease upon shares of the crop, where the sole contribution by the landlord to the joint enterprise was the use of land, it might well be doubted whether that would constitute a partnership *inter se*, but there is in this case a joint partnership of the cattle, poultry, hogs, &c., and it is the equivalent of this very property which is here for distribution. "A partnership," says Pothier, in his treatise, page *836, " may be contracted in particular things, or even in one thing, as when two neighbors agree to purchase a cow at common expense in order to feed, take care of her in common and share the profits. See, also, Williams v. Lawrence, 53 Barb. 320; Nicoll v. Mumford, 4 Johns Ch. R. 522; Musier v. Trumpbour, 5 Wend. 274. This agreement of March 16th, irrespective of the question of partnership, operated as a prior equitable assignment to the plaintiff in error of Samuel P. Jaquette's interest to the extent of his indebtedness to them.

*E. H. Hall*, for defendant in error.—The agreement was certainly a lease. There was a term certain, a fixed rent; and if Brown intended to divest himself of the possession, he would not reserve to himself the privilege of keeping one horse. The landlord could have distrained. The owner of the land could not be held under this agreement for any debts Jaquette might contract.

Mr. Justice PAXSON delivered the opinion of the court May 3d 1880.

The agreement between Joseph Johnson Brown and Samuel P. Jaquette, of October 20th 1864, is a lease of a farm upon the shares. See Steel v. Frick, 6 P. F. Smith 172. Jaquette agreed to farm the land for Brown, for which he was to have one-half the proceeds; each party furnishing one-half the seed, stock, poultry, hogs, &c. The agreement was for the term of one year, commencing on the first day of April, the usual time for letting farms in Pennsylvania. While it lacks some of the formality of a lease, it contains all the essential requisites of such an instrument. The reservation of one-half the products of the farm is sufficiently certain because it may be reduced to a certainty. Thus it was held

in Fry *v.* Jones, 2 Rawle 11, that the lease of a mill for "one-third of the toll which the mill grinds," was a good reservation of rent, and could be distrained for. See also Jones *v.* Gundrim, 3 W. & S. 531.

It was urged, however, that the agreement created a partnership *inter se.* That such was not the intention of the parties is too plain for argument. Such or similar agreements are in constant use in this state for the letting of farm lands, and it was never supposed they created a partnership. A careful examination of its terms shows that it lacks every essential feature of a copartnership. There is no division of profits, no responsibility on the part of Brown for losses, and no joint ownership in anything. The landlord is to receive "one-half the product" of the farm. This must not be confounded with profits. The product of the farm is one thing; the profit is another, and a very different matter. The product may be large, the profit inconsiderable. Again, each party is to find one-half the stock. This does not make them joint owners of the stock. They may become so by means of a joint purchase and a joint holding, but under the agreement if the landlord furnishes one-half the horses, cows and other stock, such half remains his property, and the tenant has no interest therein beyond the right to use the same under the terms of the lease.

The plaintiffs had a clear right to distrain for the rent in arrear. Jaquette was not a mere cropper, or a servant hired to work the land for a share of the produce. In the case of a cropper the legal possession remains in the hirer or landlord, and the remedy by distress is not applicable: Steel *v.* Frick, *supra;* Adams *v.* McKesson, 3 P. F. Smith 81. But Jaquette was a tenant in possession, and the remedy by the landlord is by distress as in the case of a money rent: Rinehart *v.* Olwine, 5 W. & S. 157. The plaintiffs neither exercised their right to distrain, nor did they give to the sheriff notice of their claim for rent. It follows that the interest of Jaquette was divested by the sheriff's sale, as well as the right of the plaintiffs to distrain. The subsequent agreement between the plaintiffs, the defendant and the sheriff's vendee, to place the joint property in the hands of a stranger with power to sell and hold the proceeds pending this litigation, was not, as contended by the plaintiffs, an equitable assignment of the fund to them. Jaquette's title to the joint property was claimed by the sheriff's vendee, and the object of the agreement was to preserve the property or the proceeds until the right thereto was judicially ascertained. The defendant has not parted with her right to the property or its proceeds, as vendee of the sheriff, and the judgment of the court below therefore must be affirmed.

Judgment affirmed.