# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

---

## Walker v. Tupper et al., Appellants.

| 152 | 1 |
| 158 | 271 |
| 152 | 1 |
| 161 | 57 |
| 152 | 1 |
| 166 | 495 |
| 152 | 1 |
| 182 | 11 |
| 152 | 1 |
| 225 | 202 |

*Partnership—Participation in profits.*

Participation in profits is the most generally accepted test of the existence of a partnership, and though its presence is not conclusive in favor of, its absence may be regarded as conclusive against, partnership.

The owners of an oil lease assigned an undivided three fourths interest in the lease to two other persons. The assignees agreed to drill two wells at their own expense without any liability upon the part of the assignors to defray any of the expenses of drilling, but the assignors were to pay one fourth of the operating expenses of the wells, and one fourth of the bonus due the lessor. The assignees were to drill a third well, the assignors to pay one eighth of the expenses thereof. It was further agreed that the assignors should " be the owners of the full equal one fourth of all the production (after deducting the royalty), machinery, rigs, casing, buildings and appliances of all descriptions, which may be placed upon said leasehold for use in operating the same." *Held,* that there was no partnership relation between the assignors and the assignees, and that a contract for drilling a well, entered into by the assignees, would not bind the assignors.

*Presumption—Division of production in specie.*

While the division of the production in specie does not necessarily negative the idea of the partnership, it raises a presumption against it to overcome which an actual intent to become partners should clearly appear.

*Declarations of persons alleged to be partners.*

In an action to hold several persons liable as partners, declarations of some of the defendants as to the partnership, are not evidence as to the others.

*Payment—Notes—Receipts—Conflicting presumptions.*

Where a note is taken for an antecedent debt, and a receipt in full is given, the presumption that the debt was not paid unless the notes were paid, is opposed by the presumption of payment raised by giving the receipt, and the inclination of the balance between them must be decided in the light of all the circumstances by the jury.

*Practice, Supreme Court—Misjoinder of parties.*

On an appeal from a judgment against several defendants as partners, where the Supreme Court decides that certain of the defendants are not partners, but no error appears in the judgment against the remaining defendants, the judgment will be reversed as to the former, and affirmed as to the latter, without a new venire.

Argued Oct. 17, 1892. Appeal, No. 117, Oct. T., 1892, by defendants, B. S. Tupper et al., from judgment of C. P. Washington Co., Feb. T., 1892, No. 97, on verdict for plaintiff, W. W. Walker. Before STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Assumpsit for drilling oil well.

At the trial, before McILVAINE, P J., it appeared that on July 23, 1889, Kuntz leased to George W. Reed a tract of land adjoining the borough of Washington, containing twenty acres more or less, for the purpose of oil and gas development. On Aug. 2, Reed assigned to A. M. Todd an undivided one fourth interest in the lease. On Aug. 3, Reed and Todd assigned to B. S. Tupper and A. G. Hatry an undivided three fourths interest in the lease. In this assignment Tupper and Hatry as parties of the second part covenanted as follows :

" 1. That they will at once drill upon said leasehold at such points as may be agreed upon by all the parties in interest two oil wells : said wells to be drilled exclusively and entirely at the cost and expense of said second parties and without any liability whatever upon the part of said first parties to pay any proportion of the expense of location, machinery, casing, construction of rig or drilling of said wells : but said first parties are to pay the one fourth of the operating expenses of said well when drilled to completion, and the one fourth of the bonus of five hundred dollars per well required to be paid to the lessor under the terms of said lease.

" 2. That they will proceed immediately to the erection of a third rig upon said leasehold and begin the drilling of said third well at such time as said first parties may require said well to

be drilled upon the following terms : Said second parties are to pay the seven eighths of the expense of location, construction of rig, drilling, etc., and said first parties are to pay the remaining one eighth thereof and are to pay full equal one fourth of the bonus required by said lease and the one fourth of the expenses of operating said well after completion.

" 3. All wells which may be drilled upon said premises exclusive of the three above specified shall be located at such points as may be mutually agreed upon and be drilled at the joint expense of both parties to this agreement, said first parties paying the equal one fourth, and said second parties the equal three fourths, of said expense.

" 4. It is understood and agreed that said first parties are to be the owners of the full equal one fourth of all the production (after deducting the royalty), machinery, rigs, casing, buildings and appliances of all descriptions, which may be placed upon said leasehold for use in operating the same."

Tupper and Hatry employed the plaintiff to drill the well, to recover the price of drilling which this suit is brought. Plaintiff testified that, on Dec. 12, 1889, he made a final settlement with Hatry, receiving his notes (not since paid), for which he gave a receipt, showing the charges and credits of cash paid, leaving a balance equal to the amount of the notes. The receipt did not refer to the notes but was simply " received payment," at the bottom of the above-mentioned statement.

Other facts appear by the opinion of the Supreme Court.

The court charged in part as follows :

" [A great deal has been said in your hearing about the relation that the parties defendant sustained to each other under the assignment of Aug. 3, 1889, to which I have referred, and in view of the points that have been submitted to the court, it is necessary for me to give you the construction which the court puts upon the agreement contained in this assignment, by which the defendants, Tupper, Hatry, Reed and Todd, became jointly interested. Under it they jointly undertook the production of oil and gas by drilling upon the leased premises, and each was to pay his share of the expenses, as fixed by the terms of the agreement; and each was to obtain and receive his share of the oil and gas produced, as fixed by the terms of the agreement. As among themselves they were partners,

for the purpose of developing this twenty acres of land.] [5]
The well No. 3, drilled by the plaintiff, was drilled for their
joint benefit, and among themselves they were jointly to pay
the expense of drilling the same. But notwithstanding they
may have been jointly interested, still it does not necessa-
rily follow that the defendants are liable to the plaintiff, as
partners doing business as A. G. Hatry & Co., for the price of
drilling well No. 3."

The court left to the jury the question whether plaintiff con-
tracted with all the defendants as a firm or only with Tupper
and Hatry, and continued:

"If you should find that the plaintiff's contract was made with
any one or more of these four defendants acting for a partner-
ship doing business as A. G. Hatry & Co., of which they were
all members, then they would be liable, and the second ques-
tion arising for your determination is in regard to the settle-
ment which it is alleged was made by the plaintiff with A. G.
Hatry. And this branch of the defence naturally divides itself
into two parts.

" First, did the plaintiff on the 12th day of December, 1889,
make a settlement with A. G. Hatry for the drilling of this
well, and in that settlement did he take in discharge of the in-
debtedness of the defendants the notes of Hatry, thus making
Hatry thereafter solely liable for the unpaid balance of the price
of drilling it. Where a creditor takes the promissory note of
his debtor for a pre-existing debt, and nothing more appears in
the transaction than that fact, the presumption is that the note
is taken as collateral, and the pre-existing debt will not be paid
or discharged until the note is paid. A note given for a pre-
existing debt only discharges that debt when the note is given
and received with that intention. If the debtor and creditor
intend to substitute the note for the old indebtedness and thus
cancel the debt, they can do so; and where a controversy arises
in regard to the character of the transaction, as in this case, it
is for the jury to determine under all the evidence what the in-
tention of the parties was, the burden, in the first instance, be-
ing on the debtor to show that the note was taken in payment
of the old debt, and not as collateral. Again:

" Where a debtor gives a note to a creditor for a pre-existing
debt in the shape of an existing account for work and labor

done, and at the same time and as a part of the same transaction the creditor gives a written receipt to the debtor, which, on its face, acknowledges payment of the old debt or account, the presumption would be that the note was substituted for the account and was accepted as payment of it; and the burden would be then on the creditor to show that the receipt was not intended to evidence the payment of the account, but only to evidence the receipt of the note. A receipt is an acknowledgment, and like any other acknowledgment is open to contradiction or explanation or correction. The burden of explaining that a receipt does not mean what it on its face fairly purports to mean, is on him who gives the receipt.

["Now, gentlemen, it will be for you to determine from all the evidence in the case what the intention of the parties was when Mr. Walker took the note of A. G. Hatry and gave his receipt. If the notes were given and received in payment of the amount due Mr. Walker on a settlement for the drilling of this well, and in discharge of his claim against the defendants, then he cannot recover in this action; his remedy is a suit against Hatry on these notes. If, however, you conclude from the evidence, that these notes were not given and received as payment of the account rendered by the plaintiff against Hatry & Co., then the second question on this branch of the case confronts you."] [6]

After explaining the question of equitable estoppel, the court continued:

" Did the plaintiff admit that his claim against them jointly was paid? Did the defendants, Todd and Reed, have knowledge of that admission? And did they act upon it so that they will be injured if the plaintiff is allowed now to show that such admission was in fact not true? If you find that such admission of payment was made, that these defendants did act upon it and settled with Hatry, and they would be injured by allowing the plaintiff now to show that he did not accept the notes of Hatry in payment of his account, then the plaintiff cannot recover from the defendants jointly. [But if the plaintiff did not make such admission of the payment of the joint debt, or if the defendants did not act upon this admission, or if it would not be to their injury if the admission should now be disproved, then the principle of equitable estoppel would

not apply to this case, and the giving by Walker of this receipt would not prevent the recovery of this claim, unless it was given and received as we have already said, as evidence of the payment of the entire claim, the intention of the parties, Walker and Hatry, being to substitute Hatry's note for the joint account, and in discharge of it."] [7]

Plaintiff's points were as follows:

" 1. If the jury believe that the plaintiff, W. W. Walker, accepted notes from A. G. Hatry for balance, viz.: $1,769.50, of account against the defendant firm, under settlement of December, 1889, and that said notes have not been paid, the fact that said notes were taken as aforesaid is not to be accepted as extinguishing the balance of said account as to its amount, nor as releasing G. W. Reed, A. M. Todd and B. S. Tupper from payment of the amount evidenced by said notes, and the jury on this branch of the case should find in favor of the plaintiff, unless the jury find that there was an agreement on the part of the plaintiff to accept said notes in payment of said balance." Affirmed. [1]

" 2. The fact that the contract between G. W. Reed and A. M. Todd, Esq., on the one side, A. G. Hatry and B. S. Tupper, on the other, provides, among other things, that Messrs. Reed and Todd shall pay one eighth of the expense of drilling well No. 3, on the Kuntz lease, and also receive a share of the oil or product of said well, constituted said parties partners as to the drilling of said well, and as such are liable for the expense thereof. *Answer:* Affirmed, subject to what we have said in our general charge." [2]

" 3. It having been shown that the defendants, B. S. Tupper, Geo. W. Reed, A. G. Hatry and A. M. Todd, were originally liable for the price of the work performed by the plaintiff in the drilling of this well, the burden is on them to satisfy the jury that they were released from their liability. *Answer:* This is refused; it is for the jury and not the court to determine under all the evidence whether the defendants were originally liable to the plaintiff for the price of the work done under the contract entered into with Walker; but if the jury find that all the defendants were, under the contract, liable for drilling the well for the reason that they were partners in operating this lease and drilling this well and that Walker's

contract was not with Tupper and Hatry contracting for themselves, but with them contracting for the owners of the leasehold, then the burden is on the defendants to satisfy the jury that they were released from their liability." [3]

Defendants' request for binding instructions was refused. [4]

Verdict and judgment for plaintiff for $2,016.05. Defendants appealed.

*Errors assigned* were (1–7) instructions, quoting them as as above.

*Thomas Patterson* and *R. W. Irwin*, with them *M. C. Acheson* and *James A. Wiley*, for appellants.—Defendants were not partners, as there was no community in profits: Irwin v. Bidwell, 72 Pa. 244; 3 Kent Com. 25; Lindley, Part. 13; 1 Parsons, Cont., p. 157; Edwards v. Tracey, 62 Pa. 374; Pott v. Eyton, 3 C. B. N. S. 32; Heckert v. Feigley, 6 W. & S. 139; Dunham v. Rogers, 1 Pa. 255; Hart v. Kelley, 83 Pa. 286. A share of the product is not the same as a share of the profits: Brown v. Jaquette, 94 Pa. 113.

Walker took Hatry's notes in payment of the claim. The other defendants have settled with Hatry on the faith of the receipt. They cannot be made to pay again: Fitler v. Com., 31 Pa. 406. The receipt showed the notes were taken as payment: Seltzer v. Coleman, 32 Pa. 493. Of two innocent persons, the one who occasions the confidence and loss must suffer: Garrard v. Haddan, 67 Pa. 82.

*Albert S. Sprowls*, *J. M. Braden* with him, for appellee.— Defendants were partners: Kifer v. Smyers, 15 Atl. 904; Poundstone v. Hamberger, 139 Pa. 325; Kirk v. Hartman, 63 Pa. 97.

Acceptance of the note as conclusive of payment, was a question for the jury : Megargel's Admr. v. Megargel, 105 Pa. 475; Seltzer v. Coleman, 32 Pa. 493; Dutton v. Tilden, 13 Pa. 46; Gue v. Kline & Reifsnyder, 13 Pa. 60; Shoemaker v. Stiles, 102 Pa. 549; Jones v. Shawhan, 4 W. & S. 257; Tyson v. Pollock, 1 P. & W. 375; Batdorf v. Albert, 59 Pa. 59; Jones v. Patterson, 1 W. & S. 321; Hutchinson v. Woodwell, 107 Pa. 509; Weakly v. Bell & Sterling, 9 Watts, 273.

It is presumed on error that no fact was submitted to the

jury without evidence to sustain it, unless the contrary be clearly shown: Greenhoe v. College, 144 Pa. 131 ; Oakland R. v. Thomas, 1 Penny. 435 : Gifford v. Gifford, 27 Pa. 202. Where the jury are correctly instructed the court will not reverse on a question of fact: Brinks v. Heise, 84 Pa. 246.

OPINION BY MR. JUSTICE MITCHELL, November 7, 1892 :

The fundamental question is whether the agreement between the four defendants made them partners as to the matter of plaintiff's claim.

No general definition of partnership has yet been given which applies without qualification to all the infinite variety of business arrangements in this commercial age, but an essential element universally conceded is participation in profits as such. Even this does not necessarily create partnership. In Heckert v. Fagely, 6 W. & S. 139, it was said by HUSTON, J., " the general rule that all who share in profits are liable as partners, has long been subject to many exceptions." And in Edwards v. Tracy, 62 Pa. 374, the modern English law was stated by SHARSWOOD, J., to be that direct participation in profits as such is cogent but not conclusive evidence of a partnership. Participation in profits is however the most generally accepted test, and though it is conceded that its presence is not conclusive in favor, its absence may be regarded as conclusive against partnership.

Applying this test to the agreement we fail to find any provision for the sharing of profits. It is an assignment of an interest in a lease, whereby the parties become tenants in common of an estate for years, with certain covenants among themselves for the development of the land. Two wells are to be put down at the expense of Hatry and Tupper, and a third by them but of which Reed and Todd are to pay one eighth of the expense. The agreement does not state to whom Reed and Todd are to pay, but by clear implication it is to Hatry and Tupper, the cotenants who are to do the work and pay the other seven eighths of the expense. No other parties are referred to, nor is there any hint of liability to any others. When such liability is intended it is expressly set forth as in the case of the bonus to the lessor. Then Reed and Todd are to be the owners of one fourth of the production after deducting the

royalty.   There are certain other stipulations as to other wells and as to operating expenses which may possibly raise a different aspect in regard to partnership but which are not concerned in the present case and which therefore we need not consider.    In all these covenants and stipulations thus briefly summarized, there is no blending of estates into a common title in all the parties, nor any provision for the division or participation in profits.   The title of each owner remains distinct as it was before.   If one should sell, his vendee would acquire an undivided interest in the estate itself, not a mere right to an account and the balance due his vendor.   Their estates never merged into the joint ownership of a firm, but remained as they were at first, tenancies in common in the land itself.   Nor was there to be any distribution of profits, " it is understood and agreed that said first parties are to be the owners of the full equal one fourth of all the production," precisely the share to which their estate of one fourth in common entitled them.   The division of the production in specie might not necessarily negative the idea of a partnership, but it would raise a presumption against it to overcome which an actual intent to become partners should clearly appear.   The distinction between product and profit is expressed by the present Chief Justice in the clearly analogous case of Brown v. Jacquette, 94 Pa. 113: " There is no division of profits, no responsibility on the part of Brown for losses, and no joint ownership in anything.   The landlord is to receive one half the product of the farm.   This must not be confounded with profits.   The product of the farm is one thing; the profit is another and a very different matter.   The product may be large, the profit inconsiderable."

In no view of the agreement can it be reasonably contended that the parties meant to create a partnership as to the matter now before us, and we are of opinion that their relations under it were not such that the law will raise an implication of partnership without an actual intent.

Nor did Reed and Todd incur the liability of partners by holding themselves out as such.   There is no privity of contract between them and plaintiff, and no evidence of any dealing between them.   The plaintiff's contract was with Hatry and Tupper, and the most that he testifies on this subject is that Tupper told him Reed and Todd were " interested " in the

lease, and that Hatry told him they received part of the oil. Even if these be construed as declarations of partnership, such declarations are not evidence against the others: Edwards v. Tracy, 62 Pa. 374.

The defendants Tupper and Hatry are in a different position. They were clearly partners, and the presumption was that plaintiff's settlement by taking Hatry's individual notes was not payment unless the notes were paid, and the burden of showing a contrary intent was on defendants. On the other hand the receipt in full raised a presumption of payment, and the burden of showing the contrary was on plaintiff. The two presumptions stood opposed to each other, and the inclination of the balance between them was to be decided in the light of all the circumstances by the jury. This was expressly held in Jones v. Shawhan, 4 W. & S. 257, where a note was taken by the plaintiff in a mechanics' lien, and a receipt in full given. " The presumption is," said C. J. GIBSON, " that a larger security is not exchanged for a smaller one, but the creditor may nevertheless choose the smaller. . . . By the receipt at the foot of the bill it appeared that the plaintiff had accepted the owner's note, ' in full of the above; ' which certainly was evidence to rebut the presumption and ought to have been left to the jury." See also Seltzer v. Coleman, 32 Pa. 493. But it is argued that there was no evidence of any agreement, or in fact of anything being said on this subject at the time of settlement, and therefore the presumption from the receipt must prevail. If the presumption stood unopposed this would certainly be so, but it was met by the counter presumption from the fact that the settlement in which the receipt was given was not for money, but partly at least for notes which are not yet paid. Independent of the authority of Jones v. Shawhan it would seem that the balance of the presumptions must be settled by the jury. Suppose the order of the evidence were inverted. Suppose plaintiff had proved the contract and the doing of the work, and then resting had been met by the receipt in full, it would certainly have been competent for him in reply to show that the receipt represented not money but notes, and the question whether he had overcome the presumption from the receipt would necessarily have gone to the jury. The present case raises precisely the same issue though the order of proof was

reversed. · Besides, there was in this case some evidence, perhaps not much nor very weighty, in addition to the opposing presumptions. Plaintiff testified to the circumstances of the settlement, his desire for cash and his acceptance of notes, because it was the best he could do, the custom in such matters for one person to pay the bills, etc. All this was left to the jury with correct instructions as to the law and the burden of proof, and the verdict has settled that the notes of Hatry were not taken as actual payment. Plaintiff therefore had a right of action on his contract against Hatry and Tupper. Though it does not appear expressly, it is strongly implied by the whole case, that they were not entitled to plead the misjoinder of Reed and Todd (act of April 14, 1851, § 13, P. L. 615), and as there was no error in the trial as to them, the judgment may well stand without the delay and expense of another trial: Edwards v. Tracy, 62 Pa. 374, 383.

Judgment reversed as to Reed and Todd, at the costs of appellees, and judgment affirmed as to Hatry and Tupper.