## Taylor v. Fried et al., Appellants.

*Partnership—Tenants in common—Presumption.*

A division of the product between tenants in common does not make them partners, although they may have contributed labor or money to raise it. No presumption of partnership arises from the mere fact of co-tenancy.

*Partnership—Joint purchase of goods.*

Persons who join in the purchase of goods, not for the purpose of sell-

ing them again but for the purpose of dividing the goods among themselves, are not partners and are not liable to third parties as if they were.

Argued Oct. 24, 1893. Appeal, No. 97, Oct. T., 1893, by defendants, Edward Fried et al., from judgment of C. P. No. 2, Allegheny Co., July T., 1892, No. 167, on verdict for plaintiff, M. V. Taylor. Before STERRETT, C. J., GREEN, MCCOLLUM, MITCHELL and THOMPSON, JJ. Reversed.

Assumpsit for goods sold and delivered. Before EWING, P. J.

The facts appear by the opinion of the Supreme Court. W. P. Black, one of the defendants, was not served.

The court charged as follows :

" In this case Mrs. M. V. Taylor seeks to recover from Edward Fried, Jeremiah Miller, Lewis Sands, Lee Phillips, C. G. Glatzau and W. P. Black, for a boiler furnished at an oil well at McDonald, also for some casing furnished there. They were furnished, it seems, on the order of a man named Robert Black, professing to be superintendent at the well.

" The boiler, if you believe the uncontradicted testimony, was used on the ground ; the casing, though, was not, and was not intended to be used there. The agent who sold it alleges that this man told him the casing was to be used to repay some casing they had borrowed to put in the well. We do not think there is sufficient evidence to go to the jury as to the casing. Where it went we do not know. It was not the business of the superintendent to buy that unless it was to be used in that well. But, as to the boiler, there is uncontradicted evidence that it was taken to the well and used there.

" There is evidence to go to the jury that each of these defendants was interested in the well. It is admitted that the defendants, Miller, Sands and Phillips, were interested in the well, and it seems that they got their share of the oil. But that is simply one fact for you to consider. It is not sufficient to hold them. There is evidence also that W. P. Black and Glatzau were interested in the well. There is evidence here that they made the contract to drill the well. It may be that Glatzau was simply one of those men who want to talk big and make a show of having something, when they really do not have it, but it is more likely that he had some interest at that time

In the division of oil neither Glatzau nor Black is shown to have got any of it; but Emerson & Co., who did not appear in any other way, did.

" There must be a joint liability to entitle the plaintiff to recover here. [If the defendants, each being a part owner of this well, made W. P. Black, who, it seems, had an interest at that time, their agent to drill this well for himself and them, and each was to pay a proportionate share of the expenses and have a proportionate share in the proceeds of the well, we think that would constitute them partners in this case and make them liable.] [1] If, however, there was an independent contract that Black himself was to be responsible for the drilling of this well, and he alone, they would not be liable to parties who furnished Black goods. As you find that fact your verdict should be for the plaintiff or defendants, for the price of this boiler.

" [The defendants who have been on the stand, claim that they bought an interest from Black, that he was to put down the well and that they were to pay him a proportionate share of the expenses. The precise agreement, as testified to by them, was only verbal. There was no written agreement, and the testimony seems to us a little shadowy on this point, they being interested in the proceeds of the well, or the result of it, and bound to pay a proportionate share of the expense of it, and this other man, a part owner, to put it down. There ought to be a clear showing that their bargain was that Black should do this as a principal, and not as agent], [2] but if you find he was to do it for them as principal you will find for all the defendants except Black, and you will find a verdict against Black alone, but if you find he was their agent in putting the well down, then they are liable for the boiler, but not for the casing."

Verdict and judgment for plaintiff. Defendants appealed.

*Errors assigned* were (1, 2) above instructions, quoting them; (3) entry of judgment.

*Levi Bird Duff, L. B. D. Reese* with him, for appellants.—
Assuming that all were joint owners of the lease and that the agreement was that Black should sink the well, and that each of the others should pay his share of the cost in proportion to his interest in the lease—such an agreement did not constitute

them partners. There was no joint stock or fund, no copartnership name, no sharing of profits, no authority to contract and on joint account. Each owner agreed to be responsible individually for his share of the cost of the well. They did not agree to be responsible jointly for the whole of it: Heckert v. Fegley, 6 W. & S. 139; Tupper v. Walker, 152 Pa. 1.

*J. H. Wise, W. E. Minor* with him, for appellee.—The cases cited by appellant have no application.

OPINION BY MR. JUSTICE MCCOLLUM, April 9, 1894:

We think the evidence in this case is insufficient to sustain a verdict against the defendants. They were sued as joint debtors and under the instructions of the learned court below were held liable as partners on a purchase by one of them of a boiler which he used in drilling a well upon property they owned as tenants in common. The following facts are admitted, or established by uncontradicted evidence : In the summer of 1891, W. P. Black, being the owner of an oil lease, sold to Jeremiah Miller one tenth, to Lewis Sands one tenth, to Lee Phillips one tenth and to Edward Fried two tenths of his interest therein. It was agreed between him and his vendees that he should furnish the necessary appliances and drill a well on the leased premises, and that Fried should pay to him two tenths of the expense incurred in drilling it, and each of the others should pay to him one tenth thereof. In accordance with this agreement the well was drilled and each vendee paid his proportion of the cost of it.

It appears that Sands and Phillips were joint and equal owners of a boiler which they sold to Black, and that it was to be paid for by a credit to each of them of one half the price of it, on his share of the expenses. Black used it in drilling a considerable portion of the well and then bought a boiler of the plaintiff which he used in completing it. Neither of his vendees authorized this purchase, nor did they know of it until some time after he left the state without paying his debts. It was then that the plaintiff set up the claim that she sold the boiler to the owners of the leasehold and that they were jointly liable to her for the price of it. It appears that the boiler is charged in her book of original entries to " W. P. Black and

Ed. Fried," but it is admitted that her bookkeeper, to whom the sale was reported, charged it to W. P. Black, and that the words "and Ed. Fried" were added by her direction after her salesman told her Fried was interested in the well. Turning to the evidence of her salesman, we find that his information concerning Fried's interest in the well was derived from Robert Black who was at most an employee of W. P. Black in the performance of the latter's contract with his vendees. He was not the agent of W. P. Black's co-tenants for any purpose and his statements to plaintiff's salesmen did not affect them.

We think it is clear that W. P. Black and his vendees were tenants in common of the leasehold, and that the agreement under which he drilled the well did not create a partnership inter se or a joint liability. It is quite evident that it was not the intention of the parties to become partners in the work to which their agreement was limited. It is probable that Black and his vendees believed, or at least entertained a hope, that the work contracted for would demonstrate that the leasehold was good oil property, but the latter did not consent to be jointly bound to the former, his employees, or material men, for all or any portion of the price of it, nor did their agreement include anything more than the drilling of the well. We have then a case in which one co-tenant improves or tests the common property under an agreement with each of the other co-tenants to pay his share of the expenses incurred in making the improvement or test. Thus the promise of each co-tenant created a distinct and individual liability which was measured by his interest in the leasehold. This liability was not affected by the mere fact that oil was obtained and run in the pipe line to the credit of each co-tenant in the proportion above stated, because (1) the operation of the well was not included in the agreement under which it was constructed, and (2) a division of the product between tenants in common does not make them partners, although they may have contributed labor or money to raise it: Lindley on Partnership, 18, 52, 53; 17 Am. & Eng. Ency. of Law, p. 853; Brown v. Jacquette, 94 Pa. 113, and Tupper v. Walker, 152 Pa. 1. Mr. Lindley, on page 53 of his treatise, says that "persons who join in the purchase of goods, not for the purpose of selling them again but for the purpose of dividing the goods themselves, are not partners and are not

liable to third parties as if they were.   Coope v. Eyre is a
leading case in support of this proposition.   There an agree-
ment was come to that one person should purchase oil and
then divide it amongst himself and others, they paying him
their proportion of the price.   The oil was bought accordingly
and the purchaser becoming bankrupt, the seller sought to
make the other parties to the agreement pay for the oil.   But
it was held that the purchaser purchased as a principal and
not as an agent, and, that as there was no community of profit
or loss, the persons amongst whom the oil was to be divided
could not be made liable as partners or quasi partners." In
our case there was no presumption arising from the fact that
W. P. Black and his vendees were tenants in common of the
leasehold, that they authorized him to purchase the boiler as
their agent.   Presumptively he was a principal in the transac-
tion, and the burden was therefore on the plaintiff to show that
he was their partner or agent, and not on them to show that
he was a principal.   Did they hold themselves out to the plain-
tiff or others as partners?   There is no evidence that they did.
No act or declaration of either of the co-tenants we have men-
tioned was shown which tended to place them in the position
of partners in respect to third persons dealing with him.   It is
true that Roland, who did some work in drilling the well under
an agreement with W. P. Black, testified to a conversation
with Glatzau which might have affected the latter, and possi-
bly Black, if he had been served with process, but it is doubtful
whether Glatzau was a co-tenant, and if he was his declarations
would not affect his co-tenants unless made in their presence or
authorized by them.

While the facts in this case are not precisely like those in
Tupper v. Walker, supra, the principles which control it are
the same, and the specifications of error are accordingly sus-
tained.

Judgment reversed.