In re Assigned Estate of Haines & Co.  Appeal of Henry S. Grove, Assignee for the benefit of Creditors of Wood, Brown & Co.

*Partnership—Contract of indemnity—Evidence—Consideration measured by profits.*

One who participates directly in profits as such is, as to third persons, a partner, but one who receives a compensation or consideration merely measured by a proportion of profits is not a partner. While this distinction is somewhat refined and shadowy, yet it is authoritatively established beyond question.

*Partnership—Contract of indemnity—Evidence.*

A firm consisting of seven members was engaged in the wholesale business. Two members, W. and B., who were the capitalists of the firm, proposed to purchase a retail business. The other five members of the firm objected to being connected with a retail business for the reason that it would injure the wholesale business. An informal discussion of the matter was prolonged for a month or more when it appeared that there was a partial yielding and consent, but it was not exactly or succintly stated what was actually yielded, consented to or done. Finally the parties with the aid of counsel put their agreement in writing, by the terms of which the said W. and B. were to enter a new firm which was to carry on said retail business, and their said five copartners in the old firm were to indemnify them against any loss which might result from the business of the new firm, in a sum equal to a certain per centum of the losses of the new firm, and in consideration thereof the said W. and B. agreed to pay over to the old firm a sum equal to the same percentage of profits realized by the new firm. W. and B. did enter the new firm and in the course of dealings, without the knowledge or consent of their old partners, transferred a large amount of the money of the old firm to the new. The testimony of W. and B. before the auditor was, in a general way, that it was the intention that the old firm should go into the new firm, but they refused to say that there was any other agreement than the written one. Their five copartners in the old firm denied positively and emphatically that there was any agreement outside of the writing, or that there was any intention that their firm should become partners of the new firm, or should furnish any capital to the new firm, or that they had any knowledge that W. and B. were using the capital of the old firm for the purposes of the new firm. *Held,* (1) that only the two partners entering the new firm were members thereof; (2) that the written agreement was the sole evidence of the intention of the parties, and its terms could not be altered or affected by the dealings between the two firms.

*Partnership creditors.*

Where two of the partners of a creditor firm are also partners of a debtor firm, and both firms are insolvent, the assets of each are a separate fund for its own creditors and, as to their respective creditors, the two firms are separate and distinct entities.

Argued April 3, 1896. Appeal, No. 203, Jan. T., 1896, by Henry S. Grove, assignee for the benefit of creditors of Wood, Brown & Co., from decree of C. P. No. 4, Phila. Co., March T., 1894, No. 294, dismissing exceptions to the report of the auditor distributing the balance appearing in the hands of the assignee of Haines & Co. Before STERRETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Exceptions to auditor's report.

It appeared by the report of N. Du Bois Miller, auditor, that the firm of Wood, Brown & Co. was a general partnership, formed in November, 1885, by seven persons, viz, Richard Wood, Samuel B. Brown, Henry Henderson, Charles A. Jenkins, Andrew E. Crowe, Henry C. Harper and Joseph D. Wilson. The capital was $200,000, contributed by Wood and Brown. The profits were to be divided, 45 per cent to Wood and Brown and 55 per cent to the others, in unequal proportions.

In December, 1886, Richard Wood and Samuel Brown entered into another partnership agreement with three other persons, viz, Granville B. Haines, Richard W. Bacon and William Whittaker, under the firm of Granville B. Haines & Co. (afterwards renewed under the name of Haines & Co.). This was a special partnership with a capital of $350,000, of which Bacon and Whittaker, as special partners, contributed $200,000; Haines, $75,000, and Wood and Brown together, $75,000.

In March, 1894, both firms made assignments for the benefit of creditors. It was then discovered that Wood and Brown, without the knowledge and consent of their partners in either firm, had appropriated to the use of Haines & Co. $175,000 of cash and merchandise belonging to Wood, Brown & Co. This had been accomplished and concealed by means of a series of fictitious entries in the books of both firms, the effect of which was that the $175,000 continued to appear as an asset of the balance sheets and reports to commercial agencies of Wood,

Brown & Co., while in reality it had been incorporated into the assets of Haines & Co. For this $175,000 the assignee of Wood, Brown & Co. made claim against the estate of Haines & Co.

The agreement referred to in the opinion of the Supreme Court was as follows :

Memorandum of agreement made and entered into this 13th day of January, one thousand eight hundred and eighty-seven by and between Richard Wood and Samuel B. Brown of the City of Philadelphia, of the first part, and Henry Henderson, Charles A. Jenkins, Andrew E. Crowe, Henry C. Harper and Joseph D. Wilson, all of said City, of the second part.

Whereas the said parties of the first part have become general partners in a limited co-partnership under the firm name of Granville B. Haines & Company, for the purpose of carrying on the wholesale and retail dry goods business for the term beginning on the thirtieth day of December, one thousand eight hundred and eighty-six, and ending on the thirty-first day of December, one thousand eight hundred and ninety-one, and as such general partners will together be entitled to receive fifty-six and one-half per centum(56½) of the annual profits of the business of said co-partnership with corresponding liability as between themselves and their co-partners in said firm for the debts thereof.

And whereas the said parties of the first part desire that said parties of the second part shall indemnify and hold harmless them, the said parties of the first part, from and against all losses which may result to them from the said business to the extent of an amount equal to twenty-eight and two-tenths per centum (28.2) thereof, and not exceeding sixteen and one-half per centum (16½) of the total losses of said business, and said parties of the second part are willing so to indemnify said parties of the first part, in consideration of the payment to them of the sums equal to the proportions of the shares of the yearly profits from said business, to which said parties of the first part are entitled, as hereinafter set forth.

Now this agreement witnesseth that in consideration of the premises and of the mutuality hereof, the said parties hereto have agreed, and do hereby agree together as follows :

First. The said parties of the second part will severally in-

demnify the said parties of the first part and their respective executors and administrators from and against all losses which shall or may result to them, the said parties of the first part from the business of the said co-partnership of Granville B. Haines & Company, to the extent of a sum equal to twenty-eight and two-tenths per centum (28.2) of the said losses, and not exceeding sixteen and one-half per centum (16½) of the total losses of the business of the said co-partnership, the said parties of the second part to contribute and pay to said parties of the first part the said sum in the following proportions respectively, to wit:

The said Henry Henderson, Charles A. Jenkins, Andrew E. Crowe and Henry C. Harper each four and eight hundred and sixty-six thousandths per centum (4.866), and the said Joseph D. Wilson nine and seven hundred and thirty-six thousandths per centum (9.736) thereof.

Second. And the said parties of the first part will, at the dissolution of said co-partnership, pay over to said parties of the second part, their respective executors and administrators, a sum equal to twenty-eight and two-tenths per centum (28.2) of the profits by them the said parties realized from the business of said co-partnership in the following shares respectively, to wit:

To Henry Henderson, Charles A. Jenkins Andrew E. Crowe and Henry C. Harper each four and eight hundred and sixty-six thousandths per centum (4.866) thereof, and to the said Joseph D. Wilson, nine and seven hundred and thirty-six thousandths per centum (9.736) thereof.

The auditor found that Wood and Brown were the representatives of Wood, Brown & Co. and that the two firms were practically one and that, therefore, Wood, Brown & Co. could not claim as a creditor of Haines & Co. while the creditors of Haines & Co. remained unpaid, and he therefore rejected the claim of the appellant.

The auditor's report was confirmed by the court, ARNOLD, J., in the following opinion:

The claim of Wood, Brown & Co. for a dividend was properly rejected by the auditor for the reason that Wood, Brown & Co. were members and not creditors of the firm of Haines & Co. We place our decision on the written agreement between

the members of the firm of Wood, Brown & Co., dated January 13, 1887, by which all of them became interested in the profits and losses of the firm of Haines & Co. It is true that only Messrs. Wood and Brown signed the articles of agreement of Haines & Co., but the agreement of January 13, 1887, above referred to, made all the members of the firm of Wood, Brown & Co. participants in the profits and losses of Haines & Co., and therefore partners. Whatever distinctions are made when profits are taken, as commissions or otherwise, there never has been any distinction made where profits are taken as such. In all such cases parties participating in profits and losses are partners. This exception will be dismissed.

*Error assigned* was dismissing exception to auditor's report, that the auditor erred in not awarding appellant a dividend upon the amount of his claim.

*Frank P. Prichard* and *John G. Johnson*, with them *Geo. L. Crawford*, for appellant.—There was no privity of contract, no sharing in the profits of the firm but only in the sum set apart for a partner, and no sharing in that sum but a mere agreement to pay an amount equivalent to that sum. Such an agreement does not constitute the parties who contract with the partner themselves partners: Edwards v. Tracy, 62 Pa. 374; Burnett v. Snyder, 76 N. Y. 344; Burnett v. Snyder, 81 N. Y. 550; Rockafellow v. Miller, 107 N. Y. 507; Reynolds v. Hicks, 19 Ind. 113; Riedeburg v. Schmitt, 71 Wisconsin, 644; Parsons on Partnership, ed. of 1893, secs. 106, 36; Lindley on Partnership, ed. 1888, p. 48; Bates on Partnership, ed. 1888, sec. 168; Collyer on Partnership, sec. 194; Bank v. Randle, 1 C. C. 354.

Counsel who drew the agreement evidently had in mind the case of Keystone Nat. Bank v. Reading, 1 C. C. 354. The written agreement controls: Martin v. Berens, 67 Pa. 459.

Appellant had a right to a dividend on money and property improperly paid by the checks of his firm into the bank account of Haines & Co., and for goods delivered to them, credit for which had been improperly canceled or offset: McKinney v. Heller, 16 Pa. 399; Hartley v. White, 94 Pa. 31; Graham v. Taggart, 11 Atl. Rep. 652; Levy v. Arredondo, 12 Peters, 218; Kendal v. Wood, L. R. 6 Exch. 243.

That the wrongful transfer was made by partners common to

both firms does not affect the claim inasmuch as there were other and different partners in each firm: Ex parte, James Thompson, 3 Deacon & Chitty, 612; Ex parte Law, 1 Mantagu, Deacon & De Gex, 16; In re Buckhause, ex parte Flynn, 2 Lowell, 331; In re Savage, 16 Nat. Bank Reg. 370; Read v. Bailey, L. R. 3 Appeal Cases, 94, affirming Lacey v. Hill, L. R. 4 Ch. Div. 537.

*Geo. P. Rich,* with him *Henry C. Boyer,* for sundry creditors, appellees.—Participation in profits is cogent evidence of the existence of the partnership relation: Edwards v. Tracey, 62 Pa. 374; Hart v. Kelley, 83 Pa. 286; Walker v. Tupper, 152 Pa. 1; Gibbs' Estate, 157 Pa. 59.

The auditor's findings are conclusive: Hottenstein's App., 2 Grant, 301; Harlan v. Stewart, 5 Rawle, 333; Miller's App., 30 Pa. 478; Bedell's App., 87 Pa. 510.

The assignee of Wood, Brown & Co. has no higher rights than his assignors: Mellon's App., 32 Pa. 121; Fulton's Est., 51 Pa. 211; Jordan v. Sharlock, 84 Pa. 368; Marks' App., 85 Pa. 231.

All the equities involved, both of firms and partners individually and as to their several creditors should be gone into: Tassey v. Church, 6 W. & S. 465; Raiguel's App., 80 Pa. 234; Grubb v. Cottrell, 62 Pa. 23; Allen v. Bank, 57 Pa. 129.

Haines & Co. obtained the money and property in good faith and for a valuable consideration and the appellant may not recover: Rogers v. Batchelor, 12 Pet. 221; Todd v. Lorah, 75 Pa. 155; Lindley on Partnership, p. 269 and note; Collyer on Partnership, sec. 445.

The partnership does not assume the debt of the individual partners for their contributions, and the fact that the money or goods supplied have been brought by them into the partnership as agreed, will not render the firm liable: McNaughton's App., 101 Pa. 550; Coffin's App., 106 Pa. 286: James v. Vanzandt, 163 Pa. 171; Greenslade v. Dower, 7 B. & C. 635; Dickinson v. Valpy, 10 B. & C. 141; Heckert v. Fegeley, 6 W. & S. 139; Heap v. Dobson, 15 C. B. N. S. 460; Valentine v. Hickle, 39 Ohio, 19; Fisher v. Taylor, 2 Hare, 218; Lindley on Partnership (star pages 269, 273, 274); Lindley on Partnership, 289, 311, and notes; Guillou v. Peterson, 7 W. N. 268; Read v.

Bailey, L. 3 App. Cases, 94; Willliamson v. Barbour, L. R. 9 Ch. Div. 536; Leonard v. Smith, 162 Pa. 284; Hutchinson v. Smith, 7 Paige, 26; 17 Am. & Eng. Ency. of Law, p. 1071.

*Charles Biddle*, with him *Wm. Rudolph Smith*, for Wm. Whittaker one of the partners of Haines & Co., an appellee.— The junior creditors under the agreement were to take their profits as profits and not as compensation for their services . Wessels v. Weiss, 166 Pa. 490.

The creditors of Haines & Co. having been entrapped the junior creditors are estopped, even if a fraud was perpetrated upon them, from making claim here: Lindley on Part., 148–151; 1 Am. & Eng. Ency. of Law 1068; Griswold v. Haven, 25 N. Y. 595; Strang v. Bradner, 114 U. S. 555; Broom's Legal Maxims, 639; Chester v. Dickerson, 54 N. Y. 1; Story on Part. sec. 108; Collyer on Part. sec. 445.

The equities of the partners fix the rights of the creditors: Rodgers v. Rodgers, 5 Iredell's Eq. (N. C.) 31; McFadden v. Hunt, 5 W. & S. 468; Laughlin v. Lorenz's Admr., 48 Pa. 275; Fulton's App., 95 Pa. 323; Allen v. Erie City Bank, 57 Pa. 129; Leidy v. Messinger, 71 Pa. 177; Miller v. Knauff, 2 Clark, 11; Frow, Jacobs & Co.'s Estate, 73 Pa. 466; McCormick's App., 55 Pa. 256; Houseal & Smith's App., 45 Pa. 487; Parsons on Partnership, sec. 201.

*George Tucker Bispham*, for Richard W. Bacon, appellee, cited, McCormick's App., 55 Pa. 252.

*Wm. S. Divine*, with him *Saml. B. Huey*, for sundry creditors, appellees.—Subpartners are liable as partners by reason of participation in the profits: Caldwell v. Miller, 127 Pa. 442; Gibbs' Estate, 157 Pa. 59; Fitz v. Harrington, 13 Gray (Mass.), 468; Baring v. Craft, 9 Metc. 380; Newland v. Tate, 3 Iredells Eq. (N. C.) 226; Euron v. Mackey, 10 Ont. App. 452.

As to estoppel: McNaughton's App., 101 Pa. 551; Bispham's Equity, sec. 294; Burton's App., 93 Pa. 214.

OPINION BY MR. JUSTICE MITCHELL, July 15, 1896:

The court below placed its decision on the written agreement of January 13, 1887, between the members of the firm of Wood, Brown & Co., holding that it made all of that firm partners in

the firm of Granville B. Haines & Co.   But the learned judge in his brief opinion overlooked the distinction between participation in profits as such, and a compensation or consideration merely measured by a proportion of profits.   While this distinction was admitted in Edwards v. Tracy, 62 Pa. 374, 381, to be " of a very refined and shadowy character " it was held to have been " authoritatively established . . . . and it is entirely too late now to question either the rule or the exception."

The agreement of January, 1887, nowhere provides for a participation in profits as such.   Its language is " the said parties of the first part will at the dissolution of said copartnership (G. B. Haines & Co.) pay over to the said parties of the second part . . . . *a sum equal to* twenty-eight and two tenths per centum of the profits," etc.   No agreement of Wood and Brown without the joining of Haines and the other partners could make any outside persons partners in Haines & Co., nor did this agreement attempt to do so, for even as to Wood and Brown there was no obligation to pay until their profits had been actually received by them, and then it was not a share but a sum equal to a share that was payable.   If Wood and Brown had become individually insolvent, owing the parties of the second part, and having undeclared profits in Haines & Co. the parties of the second part could not have called upon Haines & Co. to declare and account for profits to them for they had no title to profits as such even against Wood and Brown.

The agreement of 1887 is not a contract of partnership at all, either as regards G. B. Haines & Co. or Wood, Brown & Co. It is a contract of indemnity only, between Wood and Brown of the first part, and Henderson, Crowe, Jenkins, Harper and Wilson of the other part.   The firm of Wood, Brown & Co. is not a party to it, or even mentioned in it at all.   The fact that the seven persons concerned in the contract were also the members of the firm of Wood, Brown & Co. was immaterial as a matter of law.   The legal effect would have been the same if the contract had been between Wood and Brown and X, Y and Z, strangers who agreed for the consideration named to indemnify Wood and Brown in the proposed venture, and whose right to have the debits and credits of Haines & Co. and Wood, Brown & Co. with each other settled on a strictly distinct basis could not have been questioned.   The judgment cannot be sustained on this agreement.

The auditor reached the same conclusion but by, a different process, based on the acts and declarations of the parties, the oral testimony, and the agreement of January 13, 1887, treated as merely an item of evidence in the inquiry for the intentions of the parties and the actual relations of the two firms. This ground of conclusion however is no more tenable than the other.

The auditor finds that Wood and Brown were the representatives of Wood, Brown & Co. in Haines & Co., and that the two firms were practically one, and therefore Wood, Brown & Co. could not claim as a creditor of Haines & Co. while other creditors remained unpaid. This view as already discussed is contrary to the legal effect of the written agreement. It is not worth while to consider that part of the argument which denies that the circumstances of the case were such as to justify a court . in going behind the writing to inquire into the real intention of the parties, because we are of opinion that even conceding that much, the auditor's finding is against the evidence. The facts are practically undisputed and the question is of the proper inference to be drawn from them.

A general statement is all that is necessary. The firm of Wood, Brown & Co. was formed for a term of five years from January 1, 1886. In the latter part of 1886, Wood and Brown who were the senior partners and the capitalists of the firm, proposed that the firm should buy out Cooper & Conard who had a retail business of similar kind next door. The junior partners objected that the proper business of Wood, Brown & Co. would suffer, because among other reasons customers objected to dealing with a wholesale house which had a retail branch and because it would lessen the financial ability of the capitalist partners in their own firm, and would withdraw part of the time and attention of Brown which were due to their own business. The auditor reports that " The question remained under discussion in an entirely informal way for a month or more, but eventually the junior partners consented to do what Wood and Brown wanted." This brings us to the crucial question, what was it that the junior partners did consent to ? As to this the auditor reports, " Exactly what was to be done to carry out their wishes was not exactly or succinctly stated. It was known to some if not all of the junior partners that the business of Cooper &

Conard was to be bought by a new firm which was to be a limited partnership, and that Granville B. Haines was to be interested in it and give it his name; but what the extent of Wood, Brown & Co.'s interest was to be, or where the capital to represent that interest was to come from was never discussed or stated." It is just here that the auditor makes the misstep which led to his erroneous conclusion. He assumes, without expressly finding the fact, that the firm of Wood, Brown & Co. was to be "interested," i. e. partner, in the new firm of G. B. Haines & Co., and that Wood and Brown were to go into that firm not in their individual capacities but as representatives of Wood, Brown & Co. The evidence will not bear this construction. Pursuing the same view the auditor then recites the agreement of January 13, 1887, and continues, " This agreement was intended by all parties to represent the proportions in which the profits to be made by the firm of Wood, Brown & Co. in the firm of Haines & Co. were to be divided and the losses, if any, shared." As we have already seen this is exactly what the agreement does not do. The firm of Wood, Brown & Co. was not party to it, was not even mentioned in it, and it was a contract of indemnity between Wood and Brown on one side with Henderson, Crowe, Jenkins, Harper and Wilson on the other, which might just as well have been with five strangers so far as concerned its legal effect on the firm of Wood, Brown & Co. What then do we have ? A proposition made and objected to, an informal discussion prolonged for a month or more, then a yielding of objections and a consent, but what was to be done "not exactly or succinctly stated," and finally, the parties with the aid of counsel putting their agreement formally into writing. It would be difficult to imagine a case calling more strictly for the enforcement of the rule that all prior negotiations are merged in the writing which is to be the sole evidence of the intentions of the parties.

But if we look beyond the writing what is the evidence ? We must start with the inherent incredibility that five men, partners in a large business but not themselves capitalists, would embark their firm and their firm's capital in an additional enterprise of a different though somewhat similar character, without as the auditor reports it, " the extent of the firm's interest, or where the capital to represent that interest was to come

from, being ever discussed or stated." Coming then to the parol testimony, the five junior partners deny positively and emphatically that there was any agreement, outside of the writing, that there was any intention that the firm of Wood, Brown & Co. should become partner in Haines & Co., or furnish any capital to it and any knowledge that Wood and Brown were using the firm capital for that purpose. On the other hand both Wood and Brown speak in a general way of the intention that the firm should go into Haines & Co., but when brought squarely to the pinch of the question whether there was any other agreement than the one in writing refuse to say so. One or two other small items such as the sale of goods by Wood, Brown & Co. to Haines & Co. at cost, and loose talk that the latter firm was the retail branch of the former, are not worth serious consideration.

That the relations of the two firms were close, and that there were large transactions between them both in money and in goods is entirely clear, but we find nothing to justify the inference of a partnership.

Several creditors of Haines & Co. and others as appellees have supported the judgment with arguments varying almost as much from each other as from that of the appellant. What has been already said disposes of the whole case on the main ground of contention, but one or two other suggestions may be briefly noticed.

It is urged that the assignee, appellant, is not entitled to prove against the fund until the accounts between the partners of Wood, Brown & Co. shall have been settled, and then only for the amount that may be found due to the partners other than Wood and Brown. In other words that Wood and Brown being partners in the debtor firm cannot be creditors also of that firm as against other creditors. But this argument overlooks the effect of the insolvency of Wood, Brown & Co. The moment that fact is ascertained the creditors acquire a right to all the assets of that firm, among which undoubtedly is their claim against Haines & Co. If Haines & Co. were solvent there could be no question of the validity of this claim, although Brown and Wood might be creditor partners; the right would be in the creditors of Wood, Brown & Co. as a firm without reference to the status of the individual partners in either firm

among themselves. And the insolvency of Haines & Co. does not change the rights of Wood, Brown & Co.'s creditors. As to their respective creditors the two firms are separate and distinct entities, and the assets of each are a separate fund for its own creditors, just as the firm assets and the individual property of the partners are separate funds for partnership and individual creditors in ordinary cases, although the partners are equally debtors to both. Each class has a prior claim on its own fund, and only a secondary or postponed claim on the other after the latter's preferred creditors are satisfied.

The validity of the appellant's claim on its merits is also attacked. It is doubtful if any such question is really before us, as there was no exception on this subject in the court below, and of course there is no complaint by the appellant. But to avoid all further difficulty it may as well be disposed of. The auditor finds that "the right of Wood, Brown & Co. to recover back the $75,000 paid in as the capital of Wood and Brown, and the further question of the bona fides of the transaction by which the charge against Haines & Co. for $100,000 worth of merchandise was wiped off the books of Wood, Brown & Co. without the payment of any consideration whatever," depend on the real relation of the two firms to each other. As we now hold that the relation was that of separate debtor and creditor firms, that makes an end of this contention. The use of the firm's money by Wood and Brown for their contribution to the capital of Haines & Co. and the debiting of their firm $75,000 for that purpose on Haines & Co.'s books were without the consent or knowledge of the other partners, and therefore unauthorized if not fraudulent. Calling it capital on the books of Haines & Co. did not change the character of the act. Haines & Co. got the credit in their accounts without being entitled to it, and afterwards charged Wood, Brown & Co. in the same way with $100,000 worth of merchandise which the latter never bought or received. No subsequent juggling with the accounts in the books could make these anything else than debts, or amount to payment.

Decree reversed, and the claim of appellant directed to be allowed.