John McArdle, Appellant, v. The West Philadelphia Title and Trust Company et al., Executors of John M. Erickson, who were sued with George G. Erickson as lately carrying on business as J. M. Erickson & Co.

Pennsylvania Company, Appellant, v. The West Philadelphia Title & Trust Company et al.

*Decedent's estate—Continuance of business—Executors as partners.*

While a testator has the power, either to render his entire estate liable for the payment of business debts contracted after his death, or to restrict the liability to capital already put into the partnership, exempting the rest, nothing but the most clear and unambiguous language, demonstrating in the most positive manner that the testator intended to make his general assets liable for all debts contracted, in the continued trade, will justify such a conclusion.   A provision in the will, or in the articles, that the business is to be continued, or that his capital is to remain, is not sufficient to affect that part of the estate not already embarked in the partnership.

Testator bequeathed a half interest in a real estate brokerage business to his brother, the remaining half interest to be held by his executors with an option to his son to take such half interest, at an appraisement, on attaining his majority, and the son failing to do so the option to pass to his brother; he gave his brother a legacy of $2,500 and directed further as follows: "And until said remaining half interest shall be disposed of, my said brother George shall, as a condition of the gifts herein made him, pay to my executors monthly the sum of $50.00, such payments to be in lieu of the one half profits of the business which would otherwise belong to them."   The executors took no part in the conduct of the business other

than receiving the $50.00 monthly payments. *Held*, that the executors were not responsible as partners in said business conducted by the brother nor was the testator's estate liable for the debts thereof.

Argued Oct. 14, and 15, 1897.  Appeals, No. 70 and 80, Oct. T., 1897, by plaintiffs, from orders of C. P. Nos. 2 and 4, Phila. Co., March T., 1897, Nos. 722 and 936 refusing judgment for want of a sufficient affidavit of defense. Before RICE, P. J., WICKHAM, BEAVER, SMITH and PORTER, JJ.  Affirmed.

Actions of assumpsit.  Before C. P. Nos. 2 and 4, Phila. county.

These cases were argued together.

Plaintiffs claimed balances due for rents collected by George G. Erickson, conducting a real estate brokerage business under the name of J. M. Erickson & Co.

The amount claimed by John McArdle was $482.16 with interest.

The amount claimed by the Pennsylvania Company aggregated upwards of $400.

It appears from the statements of the cases that John M. Erickson who carried on the business of and traded as John M. Erickson & Co., died leaving a half interest to his brother George and directing that the other half interest be held by his executors under conditions disclosed by the terms of his will, which are fully set out in the opinion of the court.

Certain sums being alleged to be due and unpaid to the plaintiffs respectively, these actions were brought.

Defendants in their affidavits set up that the rents collected belonging to the plaintiffs, and sued for in these cases, were collected by the said George G. Erickson under agreement between plaintiffs and the said George G. Erickson alone without knowledge of defendants and nearly five years after testator's death. That defendants by no act of theirs have intermeddled with said business or with plaintiffs in connection therewith, or with George G. Erickson; and that unless by virtue of testator's will, his estate is liable as a partner in said business, and to plaintiff, notwithstanding the facts above set forth, they are improperly joined as parties defendant in this case; and that said George G. Erickson, trading as J. M. Erickson & Co., is alone liable to plaintiff for the cause of action set forth in the statements of claims.

The rules for judgment for want of a sufficient affidavit of defense were discharged and appeals taken by both plaintiffs.

*Errors assigned* in both cases were discharging the rule for judgment for want of a sufficient affidavit of defense.

*Theodore F. Jenkins*, for John McArdle, appellant, and *John G. Johnson*, for Pennsylvania Company, appellant.—The question in these cases is this: Can a testator, who directs that a certain business, of which his estate is to own one half, shall be conducted until a designated time, his estate receiving, in the interim, in lieu of profits, a designated sum, secure to his estate the benefit of such business without any liability for its losses? As the defendants were the owners of the business, and as they allowed it to be conducted by one of their number, they would ordinarily be held liable for his acts: Merrall v. Dobbins, 169 Pa. 480; 3 Kent's Com. *33.

It has been held in numerous cases that an executor carrying on a trade under the authority of a will binds himself individually by his contracts in the trade: Ex parte Garland, 10 Ves. Jr. 110; Fairland v. Percy, L. R. 3 Prob. & Div. 217; Labouchere v. Tupper, 11 Moore, P. C. 198; Downs v. Collins, 6 Hare, 418; Willis v. Sharp, 115 N. Y. 396.

Where an executor is directed to continue a partnership, the estate of the testator is liable for the partnership debts: Laughlin v. Lorenz's Admr., 48 Pa. 275.

*Alex. Simpson, Jr.*, for appellees.—Two questions of law arise on this record: 1. Was there a partnership, qua these appellants, between the estate of John M. Erickson, deceased, and George G. Erickson? 2. If there was, to what extent is the estate of John M. Erickson, deceased, liable? As to the first question there was no partnership intended by the terms. The circumstances and surroundings of the testator, are essential elements in construing a will: Postlethwaite's Appeal, 68 Pa. 477; Follweiler's Appeal, 102 Pa. 581.

The plaintiffs could have discovered the situation had they examined the will, and their rights are conclusively to be determined by what that examination would have disclosed: Smith v. Ayer, 101 U. S. 320; Guillou v. Peterson, 89 Pa. 163

It requires the most clear and unambiguous language, demonstrated in the most positive manner, that the testator intended to make his general assets liable for all debts contracted, in the continued trade after his death, to justify the court in arriving at such a conclusion: Burwell v. Mandeville, 2 How. 560; Smith v. Ayer, 101 U. S. 320.

These principles are approved in their full breadth in a long line of cases, as follows: Jones v. Walker, 103 U. S. 444; Stewart v. Robinson, 48 Hun, 327, affirmed in Stewart v. Robinson, 115 N. Y. 328; Altheimer v. Hunter, 56 Ark. 159; Bacon v. Pomeroy, 104 Mass. 577; Pitkin v. Pitkin, 7 Conn. 307; Fridenburg v. Wilson, 20 Fla. 359; Lucht v. Behrens, 28 Ohio, 231; Laible v. Ferry, 32 N. J. Eq. 791; Ex parte Garland, 10 Ves. Jr. 110; Ex parte Richardson, 3 Madd. Ch. 79; Thompson v. Andrews, 1 Myl. & K. 116; Cutbush v. Cutbush, 1 Beav. 184; McNeillie v. Acton, 4 De G., M. & G. 744.

In this state the same rule is laid down: Keeling v. Ihnsen, 26 Pitts. L. J. 101; Wilcox v. Derickson, 168 Pa. 331.

Against this mass of authority but two cases are supposed to take a different view: Hankey v. Hammond, 1 Cooke's Bankrupt Law, 67, which upon examination will be shown to be not inconsistent and if it were then it is distinctly overruled by Ex parte Garland, 10 Ves. Jr. 110, and the later English cases in which it is distinguished, and never in fact accepted in this country.

Laughlin v. Lorenz, 48 Pa. 275, shown by Judge NOYES in Wilcox v. Derickson, 168 Pa. 331, to be decided on different grounds. The intolerable result of the opposite conclusion, in postponing indefinitely the settlement of estates, and thereby compelling the conclusion reached, is vividly portrayed in Burwell v. Mandeville, 2 Howard, 560; Ex parte Garland, 10 Ves. Jr. 110, and has its counterpart in Dickinson v. Calahan, 19 Pa. 227; Quain's Appeal, 22 Pa. 510; Williams's Appeal, 47 Pa. 283.

OPINION BY WICKHAM, J., May 17, 1898:

John M. Erickson died on January 25, 1891, leaving to survive him a widow and one son, the latter being a little over six years of age. Prior to, and up to the time of his death, the decedent had conducted the business of a real estate broker by himself, but under the name of John M. Erickson & Co.

The second item of his last will and testament provides as follows : " Item.—I give and bequeath unto my brother George G. Erickson the sum of Two thousand five hundred dollars and also a half interest in my real Estate Brokerage business he to take the office furniture and fixtures and pay for the same at the valuation placed upon them by the appraisers of my estate.   The remaining half interest, in my said business, I direct shall be held by my said executors and the said business be controlled and managed, by my said brother, until the arrival at majority of my son who shall first attain the age of twenty-one years, at which time such son or in case he should decline to take, then each of my remaining sons as they shall successively arrive at said age and the others preceding having also declined to take, shall have the privilege of purchasing the said one half interest, in my said business, held by my said Executors, at a valuation to be placed upon it by three appraisers, to be appointed one by my said executors, one by my said son and a third, in case of failure of the other two to agree, by the first two appointed, the decision of a majority to be final and such price or valuation I direct shall be charged up against the share of my said son in my estate as an advancement the same to bear lawful interest until the final settlement and distribution of my estate.   If, however, none of my sons should live to attain the said age of twenty one years, or should fail to purchase the said half interest, then and in that case I direct my said executors to sell and dispose of the same, for and upon the best price and terms that can be gotten therefor, and to hold the proceeds thereof for the uses and purposes of this my will.   Provided however that in any such sale or disposal my said brother George shall have the preference if he shall desire to purchase.   And until said remaining half interest shall be disposed of, in either of the ways hereinabove provided, I direct that my said brother George shall, as a condition of the gifts herein made him, pay to my said executors, for the use and benefit of my estate, the sum of fifty dollars per month, such payments to be in lieu of the one half of the profits of the said business, which would otherwise belong to my estate, all collateral inheritance taxes, chargeable against the legacies herein made to my said brother, are to be paid by executors as part of the expenses of my estate."

The testator, in the third item of the will, bequeaths and devises all the residue of his estate to his executors, and the survivors and survivor of them and the heirs, executors, administrators, successors and assigns of the survivor, in trust, again quoting his own words, " to for and upon the uses intents and purposes following that is to say: '1. In trust to keep the same invested and collect, recover and receive the rents, issues, interest and income arising therefrom and, after deducting and paying thereout all taxes, water rents, ground rents, mortgages, interest, expenses of necessary repairs, and all other and proper and lawful charges and expenses, to pay out of the net balance and residue of said income, in equal quarterly payments the sum of fifteen hundred dollars, per annum, unto my beloved wife Annie M. Erickson, for and during all the term of her natural life, which is to be in lieu and satisfaction of her rights in my estate, under the laws of this commonwealth and out of the residue (of the residue) of said net income which shall remain, after deducting the said yearly sum of fifteen hundred dollars to use and apply so much thereof as shall be necessary for the proper maintenance education and support of all my children, during their minority, and to invest and keep invested, in lawful securities, as well the balance remaining of said income as also the interest arising therefrom, until my youngest child shall reach the age of twenty-one years.

" ' 2. In trust, immediately upon the arrival at age of my youngest child, to pay over and divide equally among all my children, then living, and the lawful issue of any of them who may then be deceased, all of the said accumulation of income together with the interest and income thereof, such issue however to take per stirpes and not per capita.

" ' 3. In trust, from and after the arrival at age of my youngest child as aforesaid, to pay over and divide the whole of the residue of the net income of my estate, remaining after the payment and deduction of the yearly sum of fifteen hundred dollars as aforesaid, in equal quarterly payments, unto all of my children then living and to the lawful issue of any of them who may then be deceased, in equal shares, for and during all the remainder of the life of my said wife, such issue however taking per stirpes and not per capita.   Should any of my said children depart this life, during the lifetime of my said wife,

the share of income of the one, so dying, shall go to and be distributed among his or her children and issue, in equal shares, said issue taking per stirpes and not per capita but, in default of such children and issue, then said share shall go to the survivors or survivor of my said children, then living, and the issue of such who may then be deceased, in equal shares, said issue taking per stirpes as aforesaid.

" '4. In trust, immediately, upon the death of my said wife, to convey, assign, pay over and divide the whole of my said residuary estate to and among all and every my child and children, then living, and the lawful issue of such of them as may then be deceased, their several and respective heirs, executors, administrators and assigns, in equal shares so always, however, that such issue of my deceased child or children, if any, shall take equally among them such part and share only which his or her or their deceased parent, or parents, would have had and taken if living; should however any of my said children be deceased, at the time of my said wife's death, without leaving any lawful issue, him her or them surviving then and in such case the share of the one, so dying, shall go to and be distributed among the survivors, or survivor, of my said children, then living, and the lawful issue of any who may be deceased, in equal shares, in fee, such issue to take per stirpes and not per capita. And should all my children be deceased at the time of my wife's death, without leaving lawful issue, him her or them surviving them, then and in such case I direct my said trustees to convey, assign, pay over and divide the whole of my said estate unto my right heirs forever.' "

The fourth item of the will provides as follows : " Item.—In addition to the provisions hereinabove made for my said wife, I have insured my life, for her benefit, in the sum of twenty thousand dollars, which sum should reasonably produce to her an income of one thousand dollars per annum. This amount, together with the aforesaid yearly sum of fifteen hundred dollars, bequeathed to her, by this my will, will furnish her with a yearly income amply sufficient not only to maintain her in a suitable manner, but, while my children are of tender years, to provide as well for their maintenance and support, and I therefore request that my said wife will, to a reasonable extent, defray the expenses of my said children out of her aforesaid income, in

order that the residue of the income, which is to accumulate for their benefit as above provided, may as far as possible be reserved intact. This request, however, is not to be considered as binding upon my said wife, in case she should see fit not to comply therewith."

The appellees were appointed executors and trustees, under the will, and invested with very extensive powers over the estate committed to their charge.

We have quoted extensively from the testamentary writing, in view of the fact that it is necessary to consider it as a whole, in order that the questions before us, for decision, and our views thereon may be fully comprehended.

Within a year after the testator's death the appellees, as we learn from their affidavit of defense, paid to George G. Erickson his legacy of $2,500, and also had appraised and set apart to him the office furniture and fixtures, mentioned in the will, and the same were accepted and paid for. In addition, they turned over to him possession of the office used by the testator in his business. Thereafter, according to the affidavit of defense, they took no part whatsoever in the control or direction of the real estate brokerage business, in which George engaged, and were not in anywise connected with him or his affairs, except to receive the $50.00 per month, which he was required by the will to pay to them, and which went into the trust fund created by the third item of the will.

The appellant contends, that by the provisions of the testamentary instrument, and the above mentioned acts of the appellees, done in pursuance thereof, a partnership was virtually formed between them and George in the brokerage business, and that they are liable with him, either personally or in their representative capacities, for the debts contracted by George within the scope of the business. The court below, very properly as we think, took a different view of the matter, and refused judgment.

The learned counsel for the appellant in this case, and in the similar one of The Pennsylvania Company for Insurance on Lives, etc., against the same defendants, both cases being argued together, while presenting their causes with signal learning and ability, we are satisfied put a construction on the will entirely foreign to the intent of the testator, and unsustained by the rules of construction, prevailing in Pennsylvania.

The great weight of modern authority is certainly in favor of the proposition, thus stated in 17 Am. & Eng. Ency. of Law, 1135: "While a testator has the power, either to render his entire estate liable for the payment of business debts contracted after his death, or to restrict the liability to capital already put into the partnership, exempting the rest, nothing but the most clear and unamb guous language, demonstrating in the most positive manner that the testator intended to make his general assets liable for all debts contracted, in the continued trade, will justify such a conclusion. A provision in the will, or in the articles, that the business is to be continued, or that his capital is to remain, not being sufficient to affect that part of the estate not already embarked in the partnership." The language just quoted is largely taken from Burwell v. Cawood et al., 2 How. (U. S.) 560, the leading case in the federal courts on the subject under consideration. In the will, there construed, the testator provided as follows: "It is my will that my interest in the copartnership, subsisting between Daniel Cawood and myself, under the firm of Daniel Cawood & Company, shall be continued therein, until the expiration of the term limited by the articles between us; the business to be conducted by the said Daniel Cawood and the profit, or loss, to be distributed in the manner the said articles provide." Cawood continued to carry on the business under the firm name as before. It was held, notwithstanding the broad direction in the will, that only so much of the testator's estate as was already embarked in the partnership was liable for its debts, contracted after his death. The court farther say, and this is the well recognized rule everywhere, that whether the direction be to continue the partnership business already in operation, or one in which the testator was solely engaged, " third persons, having notice of the death, are bound to inquire how far the agreement or authority to continue it extends and what funds it binds, and if they trust the surviving party beyond the reach of such agreement, or authority, or fund, it is their own fault, and they have no right to complain that the law does not afford them any satisfactory redress."

The reasons given by Mr. Justice STORY, in Burwell v. Cawood et al., supra, for limiting the rights of creditors, as was there done, are mainly repetitions of those so cogently

urged by Lord Eldon in Ex parte Garland, 10 Ves. 110, and largely relate to the inconveniences and inconsistencies, which would result from the application of any other rule. It would be impossible to pay off the legacies, or distribute the residue of the estate, without making provision for the recall of everything so disbursed or turned over, in case the business proved ruinous. Usually such a result would be destructive of the intent of the testator in bequeathing the legacies or residue. In the present case, while the partnership might last nearly fifteen years, the residue of the estate is distributable, by the terms of the will, immediately on the death of the widow, an event that might happen at any moment, and moreover the legacy of $2,500 to George was payable not later than a year after the testator's decease. The very evils, therefore, which the rule we are considering was intended to prevent, present themselves here. On the general subject, attention is called to the following authorities which we do not deem necessary to discuss at length: Keeling & Co. v. Ihnsen et al., 26 Pitts. L. J. 101, in which will be found a very carefully considered opinion by Judge STOWE, the facts of the case being somewhat similar to the one in hand: Pitkin v. Pitkin, 7 Conn. 307; Jones v. Walker, 103 U. S. 444; Bacon v. Pomeroy, 104 Mass. 577; McNeillie v. Acton, 4 DeG., M. & G. 744; Smith v. Ayer, 101 U. S. 320; Stewart v. Robinson, 48 Hun, 327; 115 N. Y. 328; Cutbush v. Cutbush, 1 Beav. 184; Laible v. Ferry, 32 N. J. Eq. 791; Ex parte Richardson, 3 Madd. Ch. 79; Lucht v. Behrens, 28 Ohio, 231; Fridenburg v. Wilson, 20 Fla. 359; Thompson v. Andrews, 1 Myl. & K. 116; 2 Lindley on Partnership (5th Eng. ed.), secs. 609, 610.

The testator carefully provided for the sure support of his widow, by setting apart, for her use, an annual income amounting to $1,500, to be paid in quarterly instalments, and also made express provision for the support, maintenance, and education of such minor children as he might leave behind. If we assume, as we ought, that he possessed the most ordinary business prudence and foresight, and was actuated by that anxious solicitude, which nearly every husband and father feels for the comparatively, and sometimes altogether, helpless beings who are dependent on him, it is in the highest degree improbable, that he contemplated risking his whole estate in an enterprise

the absolute control whereof was to be committed to a person, whom he did not even appoint as one of his executors. The executors and trustees under the will were to have no voice whatever in the management of a business the misfortunes or mismanagement whereof, if we accept the appellee's theory, might in a day sweep away all the testator's accumulations and leave his widow and offspring utterly destitute. More than this, his personal representatives could not even demand an accounting, from time to time, for the profits, one of the most usual rights of partners.

The scheme for the accumulation and ultimate division of the testator's general estate, not needed for the support of his widow and child, so fully expressed in the will, also indicates that it was never in his mind, that such estate should be in any manner subjected to George's power and the hazards of his uncontrolled ventures, in a business with which, so far as we can see, he was entirely unacquainted.

At the very most, the plaintiff could only claim a partnership to the extent of what the testator, at the time of his death, had in the business, and that consisted principally of its good will. It will be observed, that George was required to pay the full appraised value of all the furniture and fixtures bequeathed him, so that he thus became the sole owner thereof.

But, we are compelled to go farther and hold, that as the case is presented by the plaintiff's statement and affidavit of defense, no partnership whatsoever was created or intended to be created between George and his deceased brother's estate. The testator, having given George the legacy of $2,500, the one half interest in the business, the right to solely control and manage the whole business during a certain period, and a contingent right to buy the half interest belonging to the estate, and having also provided that George's collateral inheritance tax should be paid out of the general estate, directed as follows: "I direct that my said brother George shall, as a condition of the gifts herein made him, pay to my said executors, to the use and benefit of my said estate, the sum of fifty dollars per month, such payments to be in lieu of the one half of the profits of the said business, which would otherwise belong to my estate." The $50.00 per month is payable, not only in lieu of one half of the profits of the business, but, as well, as

a condition, or rather a consideration, for all the "gifts" or benefits made to or conferred upon him. Among these gifts is the right to absolutely control and manage the whole business according to his fancy, for a limited time, free from interruption, interference, or liability to account. To say that the receipt of the monthly payments is to be regarded as a perception of profits, or as creating a partnership, is, in the light of our Pennsylvania decisions, absurd: Edwards v. Tracy, 62 Pa. 374; Grove's Appeal, 176 Pa. 354; Walker v. Tupper et al., 152 Pa. 1. In the case last cited, Mr. Justice MITCHELL says: "And in Edwards v. Tracy, 62 Pa. 374, the modern English law was stated by SHARSWOOD, J., to be, that direct participation in profits, as such, is cogent but not conclusive evidence of a partnership. Participation in profits is, however, the most generally accepted test, and though it is conceded that its presence is not conclusive in its favor, its absence may be regarded as conclusive against partnership."

The case before us may be illustrated as follows: A donates to B $2,500, and also transfers to him the undivided one half of his, A's vessel, and, farther, gives to B, the right to use the whole vessel, for a certain period, free from any interference on the part of A, or any one claiming under him. In consideration of these benefits, B is to pay $50.00 per month to A, during the period fixed, and at the end thereof A's one half of the vessel is to be appraised and offered to C at the appraisement. If C refuses to accept, then the interest of A in the vessel shall be offered, on the same terms, to D, etc., and if refused by all, sold to the highest bidder, B to have the preference in bidding. Does the acceptance, by B, of A's offer make A the partner of B? We fail to see that such would be the result. It is plain that A, under the arrangement, would not share in the profits made by B through the use of the vessel. The latter might obtain a profit of $500 per month through the transaction or lose equally as much, but in neither event would A receive benefit or injury. But, it will be alleged, that, in the case at bar, we are dealing with a business, an intangible thing, and not with an article of personal property. Quite true, and yet, under all the circumstances, there is a certain parallelism between the two cases. The testator had an undoubted right to treat the business, which consisted

so far as the evidence shows, mainly of good will, as he might treat a vessel, a farm, or any other homogeneous article of property. He might dispose of it in whole or in part, absolutely or conditionally, for a period long or short, as he saw fit, without making his executors partners therein, or his estate liable. It is the privilege of testators, often exercised, to do peculiar things. Sometimes it is hard to exactly classsify the estates and interests created by wills, written by men who have either too mtich learning or too little. In the present case, it is quite sufficient to find out what the testator did not do or intend to do. If his purpose, as revealed by a proper application of the rules of construction, was not to create a partnership between his estate and his brother George, and we are satisfied that such is the conclusion to be drawn from the whole will, then it matters not what we call George's estate. In order to make the testator's estate liable, to any extent as a partner, the plaintiff must show, by full and fair intendment at least, that a partnership was established by the will, and the acts of the executors done thereunder. This he has not succeeded in doing. The monthly payments made by George were entirely insufficient, as we have shown, to establish the partnership relation. The estate was to receive the monthly sums, not as profits, but as a fixed compensation for the rights and privileges conferred upon George. Nor does the fact that the business may increase in value, and thus indirectly contribute profit, by the time the one half thereof still belonging to the estate is to be disposed of has arrived, affect the question. Even so might a farm, if subjected to a like disposition, grow in value, owing to the care, skill, prudence, and voluntary expenditures of the possessor. On the other hand, the business may be a thing of the past long before the end of the time, during which George was to conduct it. If it has any value when George is deposed, the estate will get the benefit of one half that value, be it much or little, not however as a partner, but, for the reason that the testator gave to George a half interest only for a limited time. Whoever secures the interest of the estate may, if he can so arrange with George, enter into partnership with the latter, or he may insist on a division. If George so mismanages his affairs as to destroy the business, of course it may be even more valueless than a sunbaked southwestern Kansas farm, or

a ship in the depths of the sea. The interest of the estate, owing to the peculiar nature of the property and the disposition made thereof by the testator, is practically only a contingent one. The testator took his chances of losing the one half, which he did not bequeath to George, by turning the whole business over to the latter, but beyond that he took no risks, nor did he create or attempt to create a partnership.

What is there left to lend support to the theory that the estate is liable? Nothing save the fact, that the testator directed that the half interest in the business, not absolutely bequeathed to George, was, "to be held" by the executors until it was disposed of, according to the terms of the will. This direction, however, does not establish a partnership. Without it the interest would, by operation of the law, remain in the executor's hands.

Much stress is laid by the learned counsel for the appellant on the case of Laughlin v. Lorenz, 48 Pa. 275. The facts of that case, however, and of the one at bar are essentially different. There the articles of copartnership contained an express covenant "that, in case of the death of any of the partners, the business shall be continued by the surviving partner to the first day of August next ensuing, in same manner as though such death had not taken place; and then an inventory of the stock and assets shall be taken and the business of the firm closed up in such manner as may be decided upon by the survivor and the representatives of the deceased partner." The "firm" was to exist until its business was closed up in the manner indicated by the will. It did so continue, after the death of Lorenz, for about nine months, in the same manner as though no such death had occurred, when it was ended in the way directed. During all this time the estate of Lorenz was entitled to the profits, if any accrued, and of course was liable for debts incurred. During the existence of the partnership and at its termination, the personal representatives of Lorenz were entitled to an accounting as to the profits and losses. Moreover, the time during which the firm was to continue, after the testator's decease was reasonable, it could not exceed a year, at the most, a circumstance not overlooked in the opinion of the Supreme Court. In the present case, there was no existing partnership when the testator died, and the argument

that one was intended to be created by the will rests on an implication too remote and ambiguous. The estate was not to participate in the profits of the business, and for that reason could not demand an accounting therefor, during its continuance, or at its termination, and, in the case of the birth of a posthumous son, the alleged partnership might last between twenty-two and twenty-three years.

The contention that the appellees are personally liable, because of their own acts, has nothing to sustain it. The affidavit of defense shows, that they merely performed their duty, under the will, by turning over to George the legacies or bequests to which he was legally entitled, and receiving from him, the monthly compensation which the will required him to pay. On what ground could they have refused him his rights? But the appellant's counsel argues, that they might have renounced the trust and thus escaped all liability. Suppose they had done this, George could and doubtless would have still insisted on the execution of the will, according to its letter and spirit, so far as he was concerned, and some other person or persons would have to be appointed in their stead. What prudent and responsible man would dare to execute the will, if by merely turning over to one of the legatees what the law would not permit to be withheld from him, and accepting from the latter a monthly sum, fixed by the will as compensation therefor, he, the trustee would become per se the legatee's partner, for fifteen years, without any control over the business, or right to inquire into its condition or management, and subject to the constant hazard of financial ruin? We are satisfied that the will can be carried out, in all its provisions, without either the executors, or the estate of the testator, assuming such a position and its consequent risk.

The order of the court below is affirmed.

OPINION BY WICKHAM, J., May 17, 1898:

The reasons given in support of the decision in McArdle v. The West Philadelphia Title and Trust Co. et al., No. 70 (Phila.) October Term, 1897, this day handed down, are equally applicable to the present case.

The order of the court below is therefore affirmed.